■ In the Matter of the Claim of LULA WADE, Appellant. NEW YORK TELEPHONE COMPANY, Respondent. PHILIP ROSS, as Industrial Commissioner, Respondent.—Appeal from a decision of the Unemployment Insurance Appeal Board, filed July 22, 1976, which affirmed the decision of a referee disqualifying claimant from receiving benefits because she lost her employment by misconduct. By notice mailed November 25, 1975, the claimant was given the initial determination of the local office that she was disqualified because "you failed to act in your employer's best interests by not following correct work procedures." It is apparent that such an allegation is not the equivalent of misconduct on its face (see *Matter of McHugh [Levine],* 47 AD2d 676). Claimant had been employed as a customer representative with the New York Telephone Company for many years prior to her discharge from employment on November 6, 1975. Hearings were held on January 7, 1976 and January 29, 1976 and at those hearings it was established that one customer complained of her rudeness on July 14, 1975 and that another one considered claimant to have called her in a "huff". The truth or falsity of those two complaints were not put in issue and have not been determined. It was established that in the entire period of claimant's employment, those two derogatory letters were the only ones in her record. The employer's representatives further testified that a Mrs. Wells, as claimant's supervisor, had monitored several of claimant's conversations with customers and that there had been what they call "breakdowns" between claimant and customers because of claimant. Those "breakdowns" as disclosed in the record are at most alleged errors on the part of claimant in carrying out the services requested. Mrs. Wells testified as to the conversations monitored by her and it should be observed that she did not contend that claimant had been harsh or rude in those customer contacts. The claimant testified that as a representative she would handle 35 to 40 contacts per day. The record establishes that the claimant had been employed more than six years and that even as of the time of her discharge from employment she was recognized as either the best or one of the best representatives of the employer. At the hearing of January 29, 1976, when the claimant's attorney was attempting to elicit

the facts as to the commendations earned by the claimant from her employer and peers, the referee stated: "Well, we have accepted that she is the best worker in the area." The employer's representative and hearing representative (counsel) raised no objection to that statement and the record very conclusively establishes that status for claimant. In any event, the "acceptance" of a fact by a referee at a hearing will clearly cause the proponent thereof to cease offering further evidence on the point and in the absence of objection such fact must be deemed established for all purposes. While the competency of an employee might be irrelevant where the conduct alleged to be misconduct is *not* the performance of one's work function, in the present case the sole misconduct warranting a denial of benefits is alleged to be the performance of the work itself. The theory that the most competent employee of the New York Telephone Company also does not follow "company procedures and standards" would upon its face suggest some extraordinary circumstances to establish misconduct. However, the record simply does not contain such circumstances although there is some proof that the claimant had made some errors. As noted herein, the claimant's supervisor, Mrs. Wells, testified as to specific occasions of monitoring the claimant and finding errors. While the record is somewhat confusing because of a propensity by the referee to interrupt the presentation from a witness to ask questions of another witness, it appears that at most five alleged errors were detailed by Mrs. Wells. It was undisputed that in addition to the monitoring by Mrs. Wells the company had other employees whose job was to monitor generally the entire operation of representatives and they did not report any errors at all during the period in question. The referee found that "during the last year of her employment, [employer] had a number of complaints against her from customers because of her rudeness and antagonistic attitude toward customers." The record establishes that in July of 1975 there was such a complaint, but that otherwise there was perhaps one more in May of 1975 and her personnel file contained no other evidence thereof. The referee would not permit the claimant or her counsel to personally inspect the claimant's personnel file. Upon the record there is no substantial evidence of a "number" of such complaints and it is readily apparent that there were no complaints prior to the last five months of her employment. A Mr. Ahearn, who had no direct knowledge of any errors on the part of claimant, alleged that the records showed that from August 29 to September 22, 1975 there were 11 observations of claimant and of those there were eight "breakdowns" or errors on her part. He did not detail these errors and even though they were supposedly in the "records" he could only give an "approximate" number. Mr. Ahearn further testified that for the period from August 28, 1975 to claimant's discharge on the following November 6, 1975 there were 48 observations of her performance and 25 "breakdowns" or errors occurred. Those errors were not in any way detailed except for the few discussed by Mrs. Wells and no documentary evidence was submitted. This record upon a consideration of it in its entirety does not establish conduct on the part of the claimant which could be considered as misconduct. At most there is some negligent performance of duties *(Matter of James [Levine],* 34 NY2d 491; cf. *Matter of Muslo [Levine],* 50 AD2d 974 [where there was both an improper performance of duties and a failure to even perform some duties]). While it was alleged that the employer had some standard operating procedures in the nature of rules which the claimant violated, it is notable that the employee, Mr. Ahearn, who directly discharged her did not even know if such procedures were in writing insofar as claimant's alleged

deviation is concerned. In *Matter of McHugh (Levine)* (47 AD2d 676, *supra*), this court observed: "Under the enlightened approach set forth by the Court of Appeals in *Matter of James (Levine)* (34 N Y 2d 491), it is not every technical violation of a company rule which rises to the level of misconduct, and oftentimes such rules are either unenforced, overlooked, or waived by acceptance of other acts or practices which in a different setting would be considered acceptable under the doctrine of substantial performance." As an additional matter, the claimant upon this appeal contends that the referee unduly interfered with her counsel in the presentation of claimant's case and cross-examination. The record establishes that the referee did on occasions cause confusion by directing questions from one witness to another as an interruption of testimony. Since the present record does not support a finding of misconduct based upon substantial evidence as a matter of law, the further question of a fair hearing need not be reached. Decision reversed, with costs to claimant against the employer, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent herewith. Koreman, P. J., Greenblott, Larkin, Mikoll and Herlihy, JJ., concur.