**Lula WADE, 1322 Prospect Place, Brooklyn, New York, on behalf of herself and on behalf of all others similarly situated, Plaintiffs,**

v.

**NEW YORK TELEPHONE COMPANY, James Ahearn, Manager and Pat Wells, Supervisor, Defendants.**

No. 78 Civ. 721 (RLC).

United States District Court, S. D. New York.

Sept. 18, 1980.

Thomas Hoffman, New York City, for plaintiffs.

George E. Ashley, William P. Witman, Jay D. Harris, New York City, for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff, a black female, was employed by defendant New York Telephone Company ("the company") as a Business Office Service Representative from January 6, 1969, until her discharge in November, 1975. Her duties included dealing with business and residential customers who call the company to obtain information or have equipment installed, discussing available services and equipment with these customers, and selling to them services and equipment profitable to the company.[1]

After her termination, plaintiff's union took her claim of "discharge without proper reason" to arbitration in January, 1977, pursuant to the collective bargaining agreement in force at the time. At the four–day arbitration hearing, plaintiff was represented by counsel and testified under oath. The arbitrator's decision, issued on June 15, 1977, found that the company had "proper reason" to discharge plaintiff as of November, 1975 in that:

> the company had reason to conclude that it had an employee whose personal behavior made it difficult to have harmonious working conditions in the office in which she was employed, that it had an employee who was not performing her job in an acceptable manner in that customers were being given incorrect information and not being treated with the courtesy which the company had a right to demand of its Service Representatives, and that it had an employee upon whom it could not fully rely to act in a truthful manner.

Arbitrator's Decision, pp. 23–24. Plaintiff did not appeal the arbitrator's decision.

Plaintiff did, however, file a charge of discrimination with the Equal Employment

---

1. Decision of Arbitrator in Grievance Involving Discharge of Lula Wade [hereinafter Arbitrator's Decision], p.2.

Opportunity Commission in December, 1975. On her EEOC charge form, plaintiff checked the boxes indicating that she was alleging discrimination based on race and sex. In the space provided on the form for describing "what unfair thing was done to you and how other persons were treated differently," plaintiff wrote that she was "discriminated against because of union activities and racial discrimination and thereby fired for performance."

On November 30, 1977, the EEOC issued to plaintiff a right–to–sue letter, informing her that it "found no reasonable cause to believe [her] allegations were true." The letter characterizes plaintiff's charge as harassment and subsequent discharge because of race and sex.

On February 17, 1978, within the statutory time limit, plaintiff initiated this suit by filing a Title VII complaint *pro se*. Subsequently, plaintiff apparently retained counsel and served an amended complaint, dated April 24, 1978, on defendant on or about May 31, 1978. Although this pleading, which supersedes the original complaint, was served after defendants had answered, the latter apparently consented to the amendment, thus meeting the requirements of Rule 15(a), F.R.Civ.P.

The amended complaint asserts that it is brought as a class action "on behalf of all past, present and future black and female employees" of the company to challenge "regulations, policies, systems, practices, customers [sic] and usages ... which discriminate on the basis of race and sex

against plaintiff Wade and her class with respect to employment opportunities" in the company. First Amended Complaint at ¶¶ 4, 8.[2] The policies and practices complained of are described only as "includ[ing], but [are] not limited to a policy and practice of hiring, terminating and failing to promote employees, which is arbitrary, capricious and has an adverse impact on blacks and females." *Id.* at ¶ 17.

The complaint also alleges that from May to November, 1975, defendants "commenced a course of conduct aimed at badgering, harassing and nagging the plaintiff and more specifically at selectively scrutinizing plaintiff's performance in order to establish misconduct and an unsatisfactory performance record thereby justifying a termination;" that plaintiff was discharged for "alleged unsatisfactory performance," and that the discharge was the culmination of conduct complained of in plaintiff's EEOC complaint filed on December 11, 1975. *Id.* at ¶¶ 14–16.[3] The plaintiff claims that defendant's conduct entitles her to relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the 14th amendment to the Constitution of the United States.[4]

Declaratory and injunctive relief for the class against the challenged hiring, promotion and termination policies was demanded, and monetary damages were sought only for plaintiff.

---

**2.** The named defendants are the company, Pat Wells, plaintiff's supervisor, and James Ahearn, a company manager. They will be referred to collectively hereafter as "the defendant."

**3.** Plaintiff did not attach to the amended complaint a copy of her EEOC charge. A copy was attached, however, to her original complaint. Plaintiff has also submitted a photocopy of a document entitled "EEOC Affidavit." This paper was not attached to any pleading, is not dated, is not notarized or authenticated, and bears no indicia of receipt by the EEOC. It was obviously prepared at some time subsequent to plaintiff's EEOC charge as it lists plaintiff's counsel as the person who will know Wade's whereabouts, while the original EEOC

charge refers to plaintiff's mother for that information. Neither party has referred to this document in any pleading or memorandum. Absent authentication, the court cannot consider the contents of that document in ruling on this motion.

**4.** The complaint does not state a cause of action under § 1983 for it lacks an allegation that defendants acted under color of state law. For the same reason, the complaint does not state a violation of the fourteenth amendment.

42 U.S.C. § 1981 provides a basis for a claim of racial discrimination, but not for discrimination based on sex. *O'Connell v. Teacher's College*, 63 F.R.D. 638, 640 (S.D.N.Y.1974) (Griesa, J.).

After answering the amended complaint, and after the discovery deadline set by the court had expired, defendants moved to dismiss the complaint for failure to state a claim, Rule 12(b)(6), F.R.Civ.P., or, alternatively, for summary judgment. As both parties have submitted material for the court's consideration beyond the pleadings, the motion will be considered one for summary judgment under Rule 56, F.R.Civ.P. *See* Rule 12(c), F.R.Civ.P.

Plaintiff contends that the complaint presents two alternate theories of liability: disparate treatment and disparate impact. The summary judgment motion will be discussed separately as to each theory.

*Disparate Treatment Allegation*

■ A disparate treatment claim exists when the plaintiff charges that the employer "treats some people less favorably than others because of their race, color, religion, sex or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–36 n.15, 97 S.Ct. 1843, 1854, n.15, 52 L.Ed.2d 396 (1977).

Insofar as the complaint alleges that plaintiff was harassed and discharged because of her race and sex, it attempts to raise a disparate treatment controversy. Defendants argue, however, that the plaintiff has failed to set forth the elements of a *prima facie* case of discriminatory discharge as required by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and its progeny, especially *Powell v. Syracuse University*, 580 F.2d 1150 (2nd Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978).

*The Prima Facie Case*

■ *McDonnell Douglas* posits the requisite order and allocation of proof in a "private, non–class action challenging employment discrimination." *McDonnell Douglas Corp. v. Green, supra*, 411 U.S. at 800, 93 S.Ct. at 1823. Initially, plaintiff must establish a *prima facie* case of discrimination. In a case alleging discriminatory failure to hire, this can be done by showing (1) that

plaintiff belongs to a minority; (2) that he applied for and was qualified for a job for which applicants were being sought; (3) that despite his qualifications he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons with complainant's qualifications. *Id.* at 802, 93 S.Ct. at 1824.

■ The Court noted that as the facts may vary in Title VII suits, so the requisite elements of the *prima facie* case may vary as well. *Id.* at n.13. Thus, in a case alleging discriminatory discharge, courts have added the requirement of showing that plaintiff was satisfying the normal requirements of his work, *see Flowers v. Crouch–Walker Corp.*, 552 F.2d 1277, 1282 (7th Cir. 1977), and have permitted the final element of the *prima facie* case to be satisfied by proof that plaintiff was replaced by a non–minority worker, *id., Powell v. Syracuse University, supra*, 580 F.2d at 1156, or, if plaintiff was not replaced, by proof that non–minority workers with comparable work records were retained while plaintiff was terminated. *Worthy v. United States Steel Corp.*, 616 F.2d 698, 700, 701 (3rd Cir. 1980); *White v. Ed Miller & Sons, Inc.*, 457 F.Supp. 148, 150 (D.Neb.1978); *see Wooten v. New York Telephone Co.*, 485 F.Supp. 748, 758–59 (S.D.N.Y.1980) (Haight, J.).

While conceding that plaintiff is a female member of a minority group and was discharged, defendant argues that she has not alleged and, moreover, cannot prove that she was performing her job satisfactorily when terminated or that she was replaced by a non–minority worker.

*Satisfactory Work Performance*

The complaint does not, in fact, expressly aver that plaintiff was performing her job satisfactorily. Instead, it states that prior to January, 1975, there were no recorded complaints concerning her work performance, that continuously until her discharge she received awards and commendations from the company and customers on her job performance, and that in May, 1975, she received an overall rating from her supervi-

sor of "satisfactory plus." Complaint at ¶¶ 11–13. These allegations obviously attempt to allege that plaintiff was a satisfactory employee.

Defendant, however, argues that however satisfactory plaintiff may have been as of May, 1975, she cannot dispute that she was unsatisfactory as of the date of her discharge in November of that year. Defendant has submitted evidence that plaintiff's breakdowns [5] were observed to be excessive after that date; that she received numerous warnings about her performance, including a warning that she might be discharged if she did not improve; and that customer complaints were received in April and July, 1975. Further, two incidents occurred in this period, which reflected negatively on plaintiff's veracity.[6]

Further, defendant points to statements in plaintiff's oral deposition indicating her awareness of the company's dissatisfaction with her. Finally, defendant argues that the arbitrator's decision collaterally estops plaintiff from denying that she was an unsatisfactory employee.

In response, plaintiff points to a decision rendered by the Appellate Division of the New York State Supreme Court, *Wade v. New York Telephone Co.*, 59 A.D.2d 1003, 399 N.Y.S.2d 906 (3rd Dept. 1977), which reversed a determination of the New York State Unemployment Insurance Appeals Board that Wade had been discharged for misconduct. In dicta, the court found as a fact that Wade was "the best worker in the area." *Id.*, 399 N.Y.S.2d at 908. Plaintiff relies on this statement as establishing that she was a satisfactory employee for purposes of her *prima facie* case. She argues that under *Flowers v. Crouch–Walker Corp., supra*, 552 F.2d at 1283, approved by the second circuit in *Powell v. Syracuse University, supra*, 580 F.2d at 1155:

The plaintiff need not show perfect performance or even average performance to satisfy [the] element [of satisfactory performance in his *prima facie* case]. He need only show that his performance was of sufficient quality to merit continued employment . . . . .

It is important to note, however, that the above–quoted statement was made and subsequently approved by this circuit in cases where the employer had never expressed to the plaintiff dissatisfaction with his work performance. Indeed both cases state that

the plaintiff need not, and indeed cannot, disprove as a cause of his discharge a source of dissatisfaction of which he is unaware. Accordingly, the employer's acceptance of his work without express reservation is sufficient to show that the plaintiff was performing satisfactorily for the purpose of shifting the burden of proof.

*Id.* at 1155, quoting *Flowers v. Crouch–Walker Corp., supra*, 552 F.2d at 1283. Indeed the quotation from *Flowers* continued as follows: "Evidence as to the actual quality of his work would be necessary only if the employer rejected his work or accepted it, for example, under express condition that the quality be improved." *Id.* at 1283.

In the instant case, it is undisputed that the employer warned plaintiff that her breakdown rate and attitude were unsatisfactory and that she might be discharged if they did not improve. In such circumstances, it is doubtful that the minimal standard of requiring plaintiff to show only that she met her normal job requirements would be sufficient to establish her *prima facie* case. *See, Lieberman v. Gant*, 474 F.Supp. 848, 864–65, n.17 (D.Conn.1979), *aff'd without discussion of this point*, 630 F.2d 60 (2nd Cir. 1980).

---

**5.** "Breakdowns" as used in this case refer to errors made by an employee. Apparently they include providing incorrect information to a customer, making a commitment to a customer that is not met, following improper procedure, keeping the customer waiting on the telephone, and failure to follow through on customer's orders and requests. Arbitrator's Decision, p. 5.

**6.** In one incident, plaintiff advised a customer that there was no one in the installation department he could talk to when, in fact, someone was available. The second incident occurred on October 14 and 15, 1975, when plaintiff was absent from work and concededly lied to the company by telling them she had been on jury duty.

Nevertheless, resolving all doubts as to the existence of a material factual dispute in plaintiff's favor, there may be a genuine dispute as to whether she can show that she was a satisfactory employee as part of her *prima facie* case.

Even assuming that plaintiff can establish the first three elements of her *prima facie* case, however, the fourth element remains problematic.

*Replacement or Comparability*

■ Defendant argues that plaintiff's failure to allege or prove that she was replaced by a male or white worker is fatal to her case. *Plaintiff concedes that she does not know who replaced her.* Moreover, Elayne McCullough, the company's District Manager, stated in her deposition that she does not know who, if anyone, replaced plaintiff.

In opposition to the motion, plaintiff correctly argues that the final element of the *prima facie* case can be proved by showing that non–minority workers with comparable work records were retained while plaintiff was discharged. Even under this alternate method, however, the complaint is deficient, for its contains no allegation referring to comparable non–minority or male workers.

A showing that plaintiff was treated differently from similarly situated whites or males is crucial to establishing disparate treatment in this case. Without some such showing, the plaintiff fails to raise an inference of discriminatory treatment based on race or gender. The most the plaintiff is then asserting is that she was discharged without adequate cause. This does not raise an issue of impermissible discrimination. An employer may discharge a worker unwisely, irrationally, or for no good reason. He is forbidden under Title VII only from discharging her based on racial or sexual animus. *Tims v. Board of Educ. of McNeil, Arkansas,* 452 F.2d 551, 552 (8th Cir. 1971); *Winston v. Smithsonian Science Information Exchange, Inc.,* 437 F.Supp. 456, 473 (D.D.C.1977), *aff'd,* 595 F.2d 888 (D.C.Cir.1979).

In addition to this glaring deficiency in the complaint, which might be remedied by further amendment, the plaintiff has not submitted any evidence to show that a genuine factual issue exists on this point.

Defendant, in contrast, has submitted a portion of the deposition of Elayne McCullough, the District Manager for the division in which plaintiff was employed and the person who made the decision to discharge plaintiff. McCullough gives several reasons for Wade's termination. "She didn't get along with fellow workers. She was a difficult person to supervise. She gave incorrect information to customers. She lied to customers. I had a problem with jury duty. Her work was unsatisfactory." McCullough Deposition at 63. McCullough also stated that she knew of no other employee in the office who "presented the same or has had a cluster of circumstances as the plaintiff." *Id.*

Plaintiff's sole response to this evidence is an affidavit of counsel, asserting that at trial "we will demonstrate . . . that other caucasian employees with similar number of breakdowns were retained," Affidavit of Thomas Hoffman, [hereinafter Hoffman Aff.] at ¶ 13. An affidavit by the company's counsel states that in all the personnel records he turned over to plaintiff's counsel during discovery, he "is unaware of any records justifying" this statement in the Hoffman Affidavit. Affidavit of Jay D. Harris, at ¶ 7.

Plaintiff's response to the summary judgment motion is clearly inadequate on this point.

■ First, plaintiff has stated *no factual basis* for her claim that such disparate treatment existed. Her counsel's affidavit cites no names or facts about allegedly favored white employees. It merely promises that evidence will be produced at trial. Under Rule 56, unsupported allegations of counsel may be disregarded in determining whether genuine issues of fact exist to be tried. *See Maldonado v. Flynn,* 485 F.Supp. 274, 285–86 (S.D.N.Y.1980) (Weinfeld, J.).

A movant for summary judgment may discharge his burden by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for his opponent. If no evidence could be mustered to sustain the nonmoving party's position, a trial would be futile, and the movant therefore is entitled to judgment as a matter of law. *See Minor v. Lakeview Hospital*, 434 F.Supp. 633, 635 (E.D.Wis. 1977), *aff'd*, 582 F.2d 1284 (7th Cir. 1978); 10 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2727 at 531.

Second, even if plaintiff produced the competent evidence promised, that evidence would at most show that white employees with breakdown rates similar to plaintiff's were retained while she was not. Defendant's articulated reasons for discharging Wade were not limited to her breakdown rates, however. Although plaintiff need not show precise equivalence between her work record and those of allegedly favored white employees, *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 283 n.11, 96 S.Ct. 2574, 2580 n.11, 49 L.Ed.2d 493 (1976), she must outline factual circumstances that could permit the court to infer comparability. *See Worthy v. United States Steel Corp.*, 616 F.2d 698, 704 (3rd Cir. 1980). Moreover, plaintiff has not even promised that evidence can be produced regarding favored treatment of male employees.

Plaintiff has failed to show that a genuine issue exists for trial as to the retention of comparable white or male workers.

*The Second Stage*

■ If a plaintiff complaining of disparate treatment has made out a *prima facie* case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection. . . ." *McDonnell Douglas v. Green, supra*, 411 U.S. at 802, 93 S.Ct. at 1824. The employer's burden in this phase is satisfied if he "simply explains what he has done or produce[s] evidence of legitimate nondiscriminatory reasons." *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 & n.2, 99 S.Ct. 295, 296 & n.2, 58

L.Ed.2d 216 (1978). The employer need not prove the absence of discriminatory motive, *id.* at 24–25 n.1, but need only bring forth evidence that he acted on a neutral basis. *Lieberman v. Gant*, 630 F.2d 60 at 65–66 (2nd Cir. 1980).

In the instant case, there is no dispute that defendant has articulated such a legitimate, nondiscriminatory reason for terminating Wade. The complaint itself states that she was discharged for "alleged unsatisfactory performance."

■ Further, the company's articulated reasons are supported by the testimony of Elayne McCullough, who concededly made the termination decision, and by the findings of the neutral arbitrator. One court has recently held that such an arbitral finding is sufficient in itself to satisfy the employer's burden and to rebut a *prima facie* case. *Becton v. Detroit Terminal of Consolidated Freightways*, 490 F.Supp. 464 (E.D. Mich.1980). Thus, even if plaintiff had established her *prima facie* case, the company has met its burden of articulating a legitimate, non–discriminatory reason for plaintiff's layoff.

*Third Stage*

Once defendant has met the burden of producing a legitimate, nondiscriminatory reason for the discharge, the burden falls on the plaintiff to prove that this articulated reason was pretextual, i. e. that it masked the employer's true discriminatory reason for discharging her. *McDonnell Douglas Corp. v. Green, supra*, 411 U.S. at 804, 93 S.Ct. at 1825; *Lieberman v. Gant, supra*, 630 F.2d at 60.

■ The employee may establish pretext in a variety or combination of ways including: (1) comparative evidence–proof that white or male employees with similarly poor work performances or employment records were retained while plaintiff was not. *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 283–84, 96 S.Ct. 2574, 2580, 49 L.Ed.2d 493 (1976); *McDonnell*

*Douglas Corp. v. Green, supra*, 411 U.S. at 804, 93 S.Ct. at 1825; *Worthy v. United States Steel Corp.*, 616 F.2d 698, 702–703 (3rd Cir. 1980); *Corley v. Jackson Police Dep't*, 566 F.2d 994, 999–1000 (5th Cir. 1978); (2) statistical evidence showing that the employer had a pattern or practice of discrimination against persons of plaintiff's race or sex; *McDonnell Douglas Corp. v. Green, supra*, 411 U.S. at 804–805, 93 S.Ct. at 1825; *Lieberman v. Gant, supra,* at 68 —a non–particularized determination that the employer was guilty of a general pattern of discrimination, however, while helpful, may not be controlling as to an individual discharge decision, especially when an otherwise justifiable reason for discharge is presented. *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 805 n.19, 93 S.Ct. at 1826 n.19; *Lieberman v. Gant, supra,* at 69— and/or (3) direct evidence of subjective intent, *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 804–05, 93 S.Ct. at 1825; *Rodriguez v. Bd. of Educ. of Eastchester Union Free School Dist.,* 620 F.2d 362 at 367 (2nd Cir. 1980); *Judge v. City of Buffalo,* 524 F.2d 1321 (2nd Cir. 1975).

To the extent that the employer, in the second stage, goes beyond merely articulating a neutral reason for discharge to substantiating that reason by proving that it has a sound and factually supported basis, the employee's task of showing that this reason was a pretext will be more difficult. *Lieberman v. Gant, supra,* at 66.

■ In the instant case, defendant has submitted documentary evidence–the McCullough affidavit and the arbitral decision–showing that its articulated reasons were factually based. In addition, defendant has submitted the EEOC determination letter finding, after investigation, that there was no reason to conclude that plaintiff's allegations were true, as some evidence that its treatment of plaintiff was not a pretext for discrimination.

This shifts to plaintiff the burden of submitting competent evidence to show that the company's reason was merely a pretext.

Once the burden of showing that a genuine dispute exists shifts to the nonmoving party, he cannot meet this burden merely by asserting that a genuine issue exists, *Wilson Jones Co. v. Gilbert & Bennett Mfg. Co.,* 332 F.2d 216, 219 (2nd Cir.1964); *Kruh v. General Services Administration,* 64 F.R.D. 1, 3 (E.D.N.Y.1974); *see Horwitz v. Sprague,* 440 F.Supp. 1346, 1351–52 (S.D.N.Y.1977) (Tenney, J.), and here plaintiff has not even alluded to how she hopes to prove pretext at trial.

While employment discrimination cases are analyzed in terms of three phases, the evidence need not be introduced in such a compartmentalized form. *Worthy v. United States Steel Corp., supra,* 616 F.2d at 701; *Whack v. Peabody & Wind Engineering Co.,* 595 F.2d 190, 193 (3rd Cir. 1979). Indeed, plaintiff may present evidence as part of her *prima facie* case which also supports her argument with respect to pretext. *Worthy v. United States Steel Corp., supra,* 616 F.2d at 701. Thus, had evidence of the retention of comparable white or male workers been submitted, such evidence might also be relevant to the question of pretext. As noted, however, she submitted no such proof.

True, plaintiff introduced some statistical data in relation to her disparate impact claim showing that blacks were discharged in 1975 in higher percentages than their representation in plaintiff's job category. As indicated below, however, the numbers represented by these statistics are too small to raise a reliable inference of discrimination and, in any event, statistics alone may not be probative of pretext in the face of an otherwise legitimate reason for discharge. *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 805 n.19, 93 S.Ct. at 1826 n.19.

In sum, plaintiff has failed to show that a genuine issue of fact exists as to the retention of comparable white or male workers, a crucial element of her *prima facie* case. Moreover, even if plaintiff had shown that she could establish a *prima facie* case at trial, defendant successfully met its rebuttal burden, and plaintiff has failed to establish a genuine factual dispute as to pretex-

tual nature of the company's articulated reasons. Accordingly, defendant is entitled to summary judgment on the disparate treatment claim.

*Disparate Impact Theory*

Plaintiff claims that she can also establish discrimination by "disparate impact" theory. Disparate impact claims challenge employment practices that are facially neutral in their treatment of different groups but that, in fact, fall more harshly on one group than another and cannot be justified by business necessity. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–36 & n.15, 97 S.Ct. 1843, 1854–1855 & n.15, 52 L.Ed.2d 396 (1977); *Hudson v. I.B.M. Corp.*, 620 F.2d 351, 355 (2nd Cir. 1980).

Defendant argues initially that an individual plaintiff cannot prove discrimination by a disparate impact analysis, but is restricted to the kind of *prima facie* case described in *McDonnell Douglas Corp. v. Green, supra*, which was set forth as applicable to "private non–class actions." *Id.* at 800, 93 S.Ct. at 1823.

It is true that disparate impact claims are usually litigated as class actions, *see, e. g., International Brotherhood of Teamsters v. United States, supra*, 431 U.S. at 335, 97 S.Ct. at 1854; *Griggs v. Duke Power Co.*, 401 U.S. 424, 430–32, 91 S.Ct. 849, 853–854, 28 L.Ed.2d 158 (1971), and despite the fact that the amended complaint characterizes this suit as a class action, it is not. Plaintiff has never moved to certify the case as a class action, as the local rules of this court require, *see* Civil Rule 11A(c), and the complaint does not contain the averments required by Civil Rule 11A(b)(2).

However, an individual has occasionally been permitted to proceed on a disparate impact theory when he claims that he was deprived of an employment opportunity by the application to him of a policy that was "fair in form" but discriminatory in operation. *E. g. Spurlock v. United Airlines, Inc.*, 475 F.2d 216 (10th Cir. 1972) (requirement of college degree and flight experience); *Jones v. Lee Way Freight, Inc.*, 431 F.2d 245 (10th Cir. 1970), *cert. denied*, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 (1971) (no transfer policy); *Clark v. Alexander*, 489 F.Supp. 1236 (D.D.C.1980) (Army promotion program).

In the instant case, plaintiff does not attack a specific neutral employment practice that discriminated against a class of which she is a member and which operated to cause her individual discharge as well. Rather her claim is that she was discharged because of her race and/or sex despite her satisfactory work performance. This claim is, in essence, a disparate treatment claim. *See Kyriazi v. Western Electric Co.*, 461 F.Supp. 894, 902 & n.5 (D.N.J.1978); *Valentino v. U.S. Postal Service*, 16 F.E.P., Cases 242, 244 (D.D.C.1977). It is not at all clear to me that a plaintiff who has failed to meet the burden set forth in *McDonnell Douglas* should be permitted to challenge the identical employment decision by a disparate impact theory. Even if this were permissible, this plaintiff has failed to state a *prima facie* case of discriminatory impact.

■ Initially, it is to be noted that whereas the complaint challenges the company's hiring, promotion and termination practices, it does not allege that plaintiff was herself aggrieved by defendant's failure to hire or promote her. Plaintiff has standing to challenge only the policies of which she was allegedly the victim–the company's discharge procedures.

■ The statistical data on which plaintiff intends to rely at trial to establish a *prima facie* case of disparate impact consists of two documents: (1) a summary sheet produced by the company showing the number of employees as of December, 1975, in each employment category, broken down into racial and ethnic groups; and (2) a handwritten sheet listing the EEO group of employees dismissed in 1975. In plaintiff's category, "Clerical Worker A," there were 343 workers in December, 1975, of whom 163 or 47.5% were black and Hispanic. Of the 9 employees in this category discharged in 1975, 7 or 77.7% were black or Hispanic. Plaintiff maintains that this statistical disparity establishes a *prima facie* case of ra-

cial discrimination, but defendants challenge the relevance and significance of these statistics.

The complaint itself makes no allegations of discrimination against Hispanics, and plaintiff is not herself Hispanic. She would seem to lack standing to raise the claims of that group, and, therefore, it is improper to group Hispanics with blacks for the purpose of establishing plaintiff's *prima facie* case. Considering only the statistics involving blacks (plaintiff submitted no statistical data regarding women), the data sheet shows that 131 or 38.1% of Clerical Workers A were black in December, 1975. Of the 9[7] employees in that category dismissed in 1975, 5 or 55.5% were black.

Even assuming that an individual plaintiff could establish a *prima facie* case based on statistics alone, *see Davis v. Califano*, 613 F.2d 957 (D.C.Cir.1979), *but see King v. Yellow Freight System, Inc.*, 523 F.2d 879, 882 (8th Cir.1975), these statistics would not suffice. To raise an inference of discrimination, the statistics must be of a nature from which such an inference can logically be drawn. While the percentages in the submitted data are somewhat disproportionate, they must be viewed in terms of the actual numbers involved. *Minor v. Lakeview Hospital*, 434 F.Supp. 633, 636–37 (E.D.Wis.1977), *aff'd*, 582 F.2d 1284 (7th Cir. 1978); *see Commonwealth of Pennsylvania v. Rizzo*, 466 F.Supp. 1219, 1228 (E.D. Pa.1979); *Presseisen v. Swarthmore College*, 442 F.Supp. 593, 624–25 (E.D.Pa.1977), *aff'd*, 582 F.2d 1275 (3rd Cir. 1978).

According to plaintiff's theory, no inference of discrimination would have been raised had 38.1% or 3.4 of the 9 workers discharged in 1975 been black. Instead of discharging 3 or 4 blacks which would have made the terminations racially unbiased according to plaintiff, the company discharged 5 blacks.

The court cannot find that an inference of racial discrimination is fairly raised by the discharge of one or two extra minority employees when the total number of dis-missals is so small. Indeed, since plaintiff was one of the blacks discharged, her retention alone would have removed the inference of discrimination which she claims is raised by the statistics submitted.

In any event, even if the statistics presented by plaintiff were sufficient to prove that the company's discharge policies had a disproportionate impact on blacks, the company would be liable to her individually only if it failed to prove that her termination was based on a lawful reason. *International Brotherhood of Teamsters v. United States, supra*, 431 U.S. at 361–62, 97 S.Ct. at 1867–1868; *Davis v. Califano*, 613 F.2d 957, 962 & n.37 (D.C.Cir.1979). Although the company might bear the burden of proof on this point, *International Brotherhood of Teamsters v. United States, supra*, 431 U.S. at 361–62, 97 S.Ct. at 1867–1868, to survive summary judgment, plaintiff must show that a genuine issue of fact exists as to the legitimacy of her discharge. Given the evidence which defendant has already submitted as to its reasons for firing plaintiff, plaintiff was obliged to submit some evidence from which the court could find that these reasons could be challenged at trial.

As to her disparate impact claim, the plaintiff has failed to establish a *prima facie* case that defendant used a facially neutral termination policy that operated to discriminate against women and blacks and which resulted in plaintiff's individual discharge.

Since it seems evident that the facts are insufficient to enable plaintiff to proceed under either a disparate treatment or a disparate impact claim, defendant's motion for summary judgment is granted in all respects.

IT IS SO ORDERED.

---

7. Plaintiff's affidavit alleges that 10 employees in her category were discharged in 1975. A later affidavit of defendant's counsel removed one white employee from the list.