**Willie F. JENKINS, Plaintiff,**

v.

**TRANS WORLD AIRLINES, INC., Defendant.**

**No. 84 CV 4191.**

United States District Court, E.D. New York.

May 28, 1986.

Silverman & Sapir, White Plains, N.Y. by Donald L. Sapir, for plaintiff.

Baer Marks & Upham, New York City by Michael Delikat, for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Plaintiff, a former employee of defendant Trans World Airlines, Inc. ("TWA"), brings this discrimination action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.* Plaintiff, a black male, alleges that his discharge was based, at least in part, upon his race and color. The case was tried before me without a jury. The following constitutes the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52.

### Findings of Fact

In June 1977, plaintiff was hired as a janitor by John Tschirhart, a TWA maintenance supervisor. Plaintiff was employed by TWA for nearly six years. Although he worked primarily as a janitor, he was transferred periodically to a higher paying ramp service position by virtue of a job-bidding procedure which was not based upon merit. At all times relevant to this action, plaintiff was a member of the collective bargaining unit represented by the International Association of Machinists ("IAM").

Plaintiff's employment history at TWA is replete with warnings, reprimands and other disciplinary action taken in response to his performance. Indeed, within a few months after plaintiff was hired Tschirhart became aware of complaints that the areas to which plaintiff was assigned were not being cleaned properly. Upon speaking to the lead janitor responsible for assigning work to plaintiff, Tschirhart was told that the complaints had been brought to plaintiff's attention. Regrettably, however, the complaints continued.

During his first year of employment with TWA, plaintiff received several oral warnings—in the presence of union representatives—regarding his poor work performance and his insubordinate attitude. Then, in May 1978, plaintiff received a written warning detailing Tschirhart's concerns regarding plaintiff's performance (including plaintiff's unsubstantiated allegations that he was being "picked on" because he was black) and advising plaintiff that further disciplinary action would be taken unless his attitude and cooperation on the job improved. Plaintiff did not file a grievance with respect to the issuance of this letter.

Later, in June 1981, plaintiff was reprimanded in the presence of a shop steward by still another supervisor, Jim Regan. Regan had also received complaints that the areas to which plaintiff was assigned had not been cleaned.

In August 1981, during one of the plaintiff's temporary ramp assignments, plaintiff was found to be in possession of several miniature liquor bottles which belonged to the airline. Following a hearing, Jenkins was discharged for unauthorized possession of TWA property. Jenkins thereafter filed for unemployment benefits with the New York State Department of Labor. After still another hearing, an Administra-

tive Law Judge ("ALJ") found that Jenkins had misappropriated company property.[1] An arbitration panel later reinstated plaintiff, but ruled that the months between his termination and the reinstatement be deemed "a penalty suspension without pay."

In October 1982, Jenkins received a two-day suspension for his role in causing damage to an airplane cargo door. Both Mr. Clark, plaintiff's supervisor at the time, and Mr. Deyo, who wrote the disciplinary memorandum with respect to the incident, are black.

In January 1983, Jenkins was transferred to the twilight shift in the area known as Corridor 2 of Hangar 12. Both the supervisor (Mr. Smith) and the lead janitor (Mr. Seraphin) on this shift were black. From the outset, both men complained about plaintiff's performance. Jenkins received frequent warnings from Smith for not performing his assigned tasks properly and for being outside his assigned work area without authorization. Upon being advised of this, Jenkins' union representatives held several meetings with him in an attempt to alleviate the problem.

Despite the union's efforts, however, Jenkins' performance continued to deteriorate. In March 1983, Tschirhart was advised by a TWA maintenance coordinator that plaintiff was found sleeping on a bench during working hours. Approximately one week prior to this incident, the same coordinator had complained to Tschirhart regarding plaintiff's performance.

With this background, I came to the incident which proved to be the straw that broke the camel's back. On March 17, 1983, lead janitor Seraphin assigned plaintiff to clean the walls and fixtures in the maintenance coordinator's office. Jenkins initially refused to perform the assignment, whereupon a meeting was convened between Jenkins, Smith, and a union representative. At this meeting, plaintiff was again informed that his performance was unsatisfactory. Smith, plaintiff's supervisor, characterized plaintiff's attitude at the meeting as negative and hostile. Indeed, as he was leaving the meeting, plaintiff called Smith a "racist M.F." [2] On March 23, 1983, Smith issued a disciplinary memorandum (which was placed in plaintiff's personnel file) memorializing the events which occurred at the meeting and warning plaintiff that further disciplinary action could be taken if his performance did not improve. *See* Defendant's Exhibit O.

On March 24, 1983, plaintiff was again assigned to clean the walls and fixtures in the maintenance coordinator's office. Later that evening, lead Seraphin told Smith that Jenkins still had not cleaned the office. Smith checked the walls in the office and noted that they were dirty. Since Smith was leaving for vacation at the conclusion of his shift, he wrote a memorandum to Tschirhart asking him to follow-up on the problem.

The next morning, on Friday, March 25, 1983, Tschirhart checked the walls in the coordinator's office and noticed that they were dirty. Upon being confronted by Tschirhart, plaintiff contended that he had, in fact, cleaned the office. In an attempt to alleviate any misunderstanding, Tschirhart escorted Jenkins to the coordinator's office and pointed to the walls and fixtures that he wanted cleaned. Tschirhart then left for the weekend.

Although there is some indication that plaintiff gathered together the supplies necessary to clean the office and that he began to clean the light fixtures, it is clear to this Court that he did not complete the job, (or, at the very least, that he did not perform it properly). In any event, on Monday, March 28, 1983, Tschirhart observed that the walls in the coordinator's office were still filthy.

When Tschirhart confronted Jenkins later that day, Jenkins again maintained that he had cleaned the office. An argument

---

**1.** The ALJ also found that plaintiff willfully made a false statement on his application for unemployment benefits.

**2.** At trial, plaintiff testified that the "M.F." referred to "my friend."

ensued between Jenkins and lead Seraphin, whereupon a shop steward was summoned. When Tschirhart showed the wall to the shop steward, the steward acknowledged that the wall was still dirty.

Shortly thereafter, and after consulting with TWA's Director of Industrial Relations, Tschirhart advised Jenkins by memorandum that a discharge hearing would be convened. *See* Plaintiff's Exhibit 18. Jenkins, Tschirhart, Smith, Seraphin and shop steward Morales testified at the hearing, which was held on April 7, 1983.

On April 8, 1983, TWA's Director of Maintenance advised plaintiff in writing that his employment was being terminated. Jenkins was also advised of this decision by Tschirhart.[3]

Thereafter, the union refused plaintiff's request that his discharge be taken to arbitration, finding no basis for plaintiff's complaint. Indeed, a union official noted that without the union's efforts, plaintiff would have been discharged sooner.

Jenkins' claim for unemployment benefits was denied by the Unemployment Insurance Section of the New York State Department of Labor, after an ALJ found that plaintiff had failed to clean the wall in the coordinator's office, and that claimant's actions (or inaction) rose to the level of misconduct. Moreover, Jenkins' discrimination claim was rejected by the New York State Division of Human Rights.

Accordingly, plaintiff filed this action, alleging that his race and color were factors in his discharge. Plaintiff claims, *inter alia*, that Tschirhart repeatedly made racist remarks (involving words like "nigger" and "blackmania") to the plaintiff and others. Tschirhart denies making these remarks.[4] Upon consideration, the Court resolves this credibility issue in favor of Tschirhart.

*Discussion*

Plaintiff seeks recovery under a disparate treatment theory, claiming that his discharge was motivated, at least in part, by his race and color. In order to establish a claim under a disparate treatment theory, "proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Teamsters v. United States,* 431 U.S. 324, 329 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977).

The Supreme Court has set forth the controlling legal standards regarding the burden of proof of Title VII cases:

First, the plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's [discharge]."... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)).

Plaintiff has attempted to establish his *prima facie* case by relying, primarily, upon testimony that Tschirhart made several rascist remarks over the years, and that Smith and Tschirhart had continuously harassed plaintiff and others. Admittedly, this Court has a difficult time finding that plaintiff has established a *prima facie* case based upon direct evidence of discrimination, since the Court has resolved the credi-

---

**3.** Specifically, Tschirhart told Jenkins that he had "good news and bad news"—the good news being that Jenkins had been recalled to ramp service, the bad news being that he was fired.

**4.** Tschirhart concedes that a few years before Jenkins' discharge, Tschirhart sarcastically remarked that Jenkins could leave TWA and become a basketball player. The Court attaches little significance to this remark.

bility issues arising from this testimony in favor of the defendant. Moreover, given plaintiff's extensive history of discipline and poor work performance, it seems doubtful that he has established a *prima facie* case under the now-familiar *McDonnell Douglas*[5] factors, since plaintiff has not convinced the Court that he was qualified to perform the job. *See Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.1985).

However, this Court is mindful of the Supreme Court's admonition that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *See Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093–94. Moreover, in light of my finding, as stated below, that the defendant has met its burden of articulating a legitimate non-discriminatory reason for plaintiff's discharge, it hardly seems worth splitting-hairs over whether plaintiff has established his prima facie case. Indeed, as the Supreme Court has noted:

Where the defendant has done everything that would be required of [it] if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

*United States Postal Service v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (citation omitted).

Without question, defendant has met its burden of providing a legitimate non-discriminatory reason for plaintiff's discharge. Defendant contends that plaintiff's discharge was based upon his history of discipline, insubordination and poor work performance, and more specifically, his fail-ure to clean up the coordinator's office and his conduct in and around the time of this incident.

Thus, inasmuch as defendant has met its limited burden, plaintiff is obligated to show that defendant's articulated reasons are, in fact, pretextual, and hence, to persuade the Court that he has been the victim of intentional discrimination. Plaintiff has failed to meet this burden.

As previously indicated, the Court finds that plaintiff's evidence regarding racial remarks and acts of harassment allegedly attributed to TWA supervisors is unworthy of credence. Likewise, the Court finds no evidence that plaintiff, or any other black or minority employee at TWA,[6] has been treated differently than their white counterparts.

Moreover, this Court notes that plaintiff's theory that defendant's articulated reason is pretextual is belied by the fact that both the New York State Division of Human Rights and the New York State Department of Labor have rejected his claims, *see Wade v. New York Tel. Co.,* 500 F.Supp. 1170, 1178 (S.D.N.Y.1980), and his own union refused to arbitrate his claim.

Plaintiff simply has failed to persuade the Court that a discriminatory reason more likely motivated his employer or that his employer's preferred explanation is unworthy of credence. *See Burdine, supra,* 450 U.S. 256, 101 S.Ct. at 1095. In short, I find that plaintiff's race and color were not even the slightest factors in his discharge.

Accordingly, the clerk is directed to enter judgment for the defendant. After much consideration, defendant's request for costs and attorney's fees is denied.

SO ORDERED.

---

**5.** In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court held that a Title VII plaintiff may establish a *prima facie* case of discrimination by demonstrating that (i) he belongs to a protected class, (ii) that he was qualified for the position he held, (iii) that he was discharged, and (iv) that, after he was discharged, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *Id.* at 802, 93 S.Ct. at 1824. In a discharge context, the question whether an employee is qualified to hold a position has been addressed by examining whether the employee's performance at that position has been satisfactory. *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.1985).

**6.** Black and minority workers comprised approximately 50% of the janitorial staff at TWA.