870 F.2d 658
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Danny B. WILLIAMS, Plaintiff-Appellant,
v.
FORD MOTOR COMPANY and Equifax Services, Inc., Defendants-Appellees.
 No. 87-6328.
 United States Court of Appeals, Sixth Circuit.
 March 13, 1989.
 
 Before RALPH B. GUY Jr. and ALAN E. NORRIS, Circuit Judges, and ROBERT HOLMES BELL, District Judge.*
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Plaintiff, Danny Williams, brought a Title VII[1] action against defendant Ford Motor Company following his discharge from employment with Ford. He alleged that he suffered disparate treatment from Ford as a result of his race. While this suit was pending, Williams amended his complaint and added theories of invasion of privacy and outrageous conduct causing severe emotional distress. Equifax Services, Inc., was also added as a party defendant in these pendant common law counts.
 
 
 2
 At the conclusion of plaintiff's proofs, the district judge granted the defendants' Fed.R.Civ.P. 41(b) motions for dismissal. Plaintiff appeals from this dismissal. Upon a review of the record, we conclude, as did the district court, that Williams failed to make out a prima facie case of discrimination and that he failed to produce evidence in support of his invasion of privacy and outrageous conduct claims.
 
 I.
 
 3
 Prior to discharge on May 10, 1983, Williams had worked for Ford since October 1965. Throughout this period of time, Williams compiled an extensive disciplinary record, primarily as a result of unexcused absences. Ford is required by its collective bargaining agreement to apply discipline on a progressive basis. Early penalties are relatively minor, such as reprimands and warnings, but repeated offenses generate lay-offs. Ultimately dismissal is mandated.
 
 
 4
 In May 1980, Williams had received a final warning as a result of repeatedly failing to report for work. When he failed to heed this final warning, he was discharged. He was later reinstated but was subsequently discharged again under similar circumstances. Williams was again reinstated but continued to have attendance problems, and he again received final warnings in both December of 1982 and May of 1983. Several of these disciplinary incidents involved abuse of medical leaves of absence. When Ford suspects an employee is repeatedly abusing medical leave privileges, Ford will initiate a professional investigation utilizing the services of defendant Equifax.
 
 
 5
 The incident which resulted in Williams' discharge began when he obtained authorization for a medical leave of absence on April 15, 1983, due to a back injury. This leave was to expire on April 26. Subsequently, this leave was extended until May 4. Williams, however, did not return to work on May 5 after his leave expired. Instead, he showed up for work on May 9. In the meantime, Equifax had reported on May 6 that its investigator had seen Williams playing softball on May 5, the day after his medical leave of absence had expired. During the game, Williams was actively twisting, jumping, and catching line drives. When Williams returned to Ford on May 9, he could not justify his unexcused absence for four days after his medical leave had expired. He admitted that he had failed to report to work on May 5 and that he had played softball on that day. Because the next penalty in the progressive penalty system was discharge, Ford terminated Williams' employment.[2]
 
 II.
 
 6
 In connection with the Fed.R.Civ.P. 41(b) dismissal of this case, the court made extensive findings of fact. Pursuant to the mandate of Fed.R.Civ.P. 52(a), these findings may not be disturbed unless clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564 (1985). Williams does not direct our attention to any erroneous factual findings, nor has our own review of the record disclosed any. Williams does argue, nonetheless, that the district court erred in finding that he did not present a prima facie case. This contention is predicated upon two arguments. Williams first argues that a state unemployment compensation proceeding determined that his discharge was not for just cause and that this holding is both res judicata and determinative of the prima facie case issue. Williams also argues that he met the prima facie case requirements of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. We address these arguments seriatim.
 
 The Res Judicata Issue
 
 7
 After discharge, the plaintiff filed for unemployment benefits. Ford contested plaintiff's entitlement to benefits arguing that this was a just cause discharge. The claim was administratively reviewed and ultimately wound up in the Jefferson County Circuit Court. The court ruled against Ford and ordered that unemployment benefits be paid. Thus, argues Williams, Ford is now estopped from arguing a just cause discharge. There are several problems with this argument. First, Ford would only need to articulate a legitimate business reason for discharge after the plaintiff made out a prima facie case. Since the plaintiff failed to do so here, the issue of just cause, or the absence thereof, is never reached.
 
 
 8
 Second, unless there is an "identity of issue," the doctrines of res judicata or collateral estoppel are not applicable. Whittenberg Engineering & Construction Co. v. Liberty Mutual Insurance Co., 390 S.W.2d 877, 883 (Ky.1965). The issue before the district court in this Title VII action was whether plaintiff was discriminated against on the basis of race. This was not an issue before the Jefferson County Circuit Court. This might have been the most unfair discharge in the history of labor relations, but that has nothing to do with whether racial discrimination was involved. Since different issues were at the core of the two proceedings, there is no bar resulting from the state court determination.
 
 
 9
 The McDonnell Douglas Prima Facie Case Issue
 
 
 10
 In McDonnell Douglas, the Supreme Court set forth the four elements that must be established to make out a prima facie case of discrimination:
 
 
 11
 (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
 
 
 12
 411 U.S. at 802 (footnote omitted). McDonnell Douglas involved claims of discrimination in hiring. Numerous courts have adapted this test's four elements to address allegations of discriminatory discharge.
 
 
 13
 Thus, in a case alleging discriminatory discharge, courts ... have permitted the final element of the prima facie case to be satisfied by proof that plaintiff was replaced by a non-minority worker, or, if plaintiff was not replaced, by proof that non-minority workers with comparable work records were retained while plaintiff was terminated.
 
 
 14
 Wade v. New York Telephone Co., 500 F.Supp. 1170, 1174 (S.D.N.Y.1980) (citations omitted).
 
 
 15
 Plaintiff's theory in this case was disparate treatment. Thus, he needed to show, in essence, that white workers with similar work and discipline records were not discharged. Williams failed to show even one such example, and the case histories of the employees vaguely referenced supported Ford's position.
 
 
 16
 We also note that as to the second prong of the McDonnell Douglas four-point test--qualifications, plaintiff is hard put to convincingly argue that he is qualified for his job in the face of his admission of flagrant abuses of his employer's medical leave policy.
 
 
 17
 Williams clearly failed to make out a prima facie case of disparate treatment:
 
 
 18
 "Disparate treatment" ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment.
 
 
 19
 International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977). Here, there was a complete failure of proof of the issue of discriminatory motive and no evidence of differences in treatment.
 
 III.
 
 20
 As to the common law claims involving Equifax, plaintiff essentially alleged that defendants cast plaintiff in a false light, caused him to be the object of ridicule and embarrassment, and violated his right to privacy. Although the pleadings were vague and conclusive, the district court examined the evidence under three theories of recovery: invasion of privacy by public disclosure of private facts, false light invasion of privacy, and intentional infliction of emotional distress by outrageous conduct. All three of these tort theories are recognized by the Kentucky courts.
 
 
 21
 Since we find each of these theories utterly lacking in merit, we find it unnecessary to parse the elements of each of these torts in detail. Suffice it to say, there is nothing outrageous about an employer investigating an employee who is regularly playing softball when he is supposed to be on medical leave. Similarly, neither the employer (Ford) nor the investigating agency (Equifax) violated Williams' privacy when the results of the Equifax investigation were disclosed to the three Ford employees who were necessarily involved in the decision to terminate Williams. Likewise, since Williams admitted to the truth of the information supplied by Equifax to Ford, there was no "false light" implication resulting from this disclosure.[3]
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable Robert Holmes Bell, United States District Court, Western District of Michigan, sitting by designation
 
 
 [1]
 42 U.S.C. Sec. 2000(e)
 
 
 [2]
 This was not the first time that Ford learned that Williams was playing softball while on medical leave
 
 
 [3]
 Equifax had conducted two investigations of the plaintiff at the request of Ford. One was done in 1980 and the other in 1983, just prior to discharge. In addition to reporting on Williams' softball activities, Equifax also informed Ford about the disposition of a shoplifting charge brought against Williams, and the payment record of one of his charge accounts. Although these latter two pieces of information are arguably not germane to Williams' employment relationship, they were not "false" information nor was Williams able to show any adverse consequences or damages flowing from the disclosure