Jesse H. BECTON, Plaintiff,

v.

The DETROIT TERMINAL OF CONSOLIDATED FREIGHTWAYS and Local 299 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants.

Civ. A. No. 79–74785.

United States District Court,
E. D. Michigan, S. D.

June 5, 1980.

Kathleen A. Gmeiner, Wayne County Neighborhood Legal Services, Detroit, Mich., for plaintiff.

Frederick R. Damm, Spicer & Littman, Detroit, Mich., for Consolidated Freightways.

Ted J. Cwiek, Hoffa, Chodak & Robiner, Detroit, Mich., for Local 299.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Plaintiff, half Black and half American Indian, brought suit in this court under 42 U.S.C. § 1981 and M.C.L.A. § 37.2801, alleging that his termination (along with the way in which the resulting grievance was handled) was racially discriminatory (Count I), and that he was retaliated against for filing Civil Rights charges (Count II). Named as defendants were Consolidated Freightways, his former employer, and Local 299 of the International Brotherhood of Teamsters, his union.

In a case of this sort, the burden of proof is always on the plaintiff to establish the fact of racial discrimination. Notwithstanding this burden of proof, there are times when the burden of producing evidence shifts to the defendant. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Furnco Construction Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Board of Trustees v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). At the outset of the trial, the plaintiff must produce evidence that would, if believed, establish a *prima facie* case of race discrimination. To do this, he must produce evidence tending to show:

(i) that he belongs to a racial minority;

(ii) that he was satisfactorily performing the job to which he was assigned;

(iii) that despite this satisfactory performance, he was terminated; and

(iv) that he was replaced by a white employee.

See *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277 (7th Cir. 1977); *Potter v. Goodwill Industries*, 518 F.2d 584 (6th Cir. 1975).

■ Once plaintiff has produced enough evidence to carry this initial burden, defendant then has a choice. He can produce no additional evidence on the issue of termination and rely on the hope that the fact finder will not believe all of the plaintiff's evidence. If defendant is not convinced that the fact finder will disbelieve the plaintiff's "*prima facie*" case, he will then attempt to "articulate some legitimate, non-discriminatory reason for the [treatment given to the plaintiff]." *McDonnell Douglas, supra; Furnco, supra; Sweeney, supra.*

■ Following this showing by the defendant, plaintiff is given an opportunity to produce evidence tending to show that the reasons asserted by the employer, even if true in fact, were only pretexts to cover up racial discrimination.

■ While the procedure outlined above was developed in cases brought under 42 U.S.C. § 2000e–5, the same procedure applies to cases brought under 42 U.S.C. § 1981 and M.C.L.A. § 37.2202. *Long v. Ford Motor Co.*, 496 F.2d 500 at 505 n. 11 (6th Cir. 1974); *Civil Rights Commission v. Chrysler*, 80 Mich.App. 368 at 375 n. 4, 263 N.W.2d 376 (1977).

The court has already ruled that plaintiff has failed to prove the charges leveled against the defendant union; therefore, all that is presently before the court is the claim against the employer.

The specific claim of the plaintiff is that while he may not have always performed his job in a perfect fashion, he did nothing which would have led to his termination had he been white. Defendant, on the other hand, claims that plaintiff broke the company rules and that his termination was warranted for this reason. Defendant further asserts that race had nothing to do with the decision to terminate plaintiff and that any person, red, black or white, who had been found to have acted in the manner in which plaintiff acted would have been terminated.

These positions were presented in this fashion. First, to establish its *prima facie* case, the plaintiff produced evidence to show that he is half American Indian and half Black, that he had been performing his job in a satisfactory manner (that is, in such a manner that he would not have been terminated had he been white), and that despite this satisfactory performance, he was terminated and replaced by a white person.

■ At this point, the defendant company chose to attempt to show that its decision to terminate the plaintiff was made with just cause. Since plaintiff had filed a grievance to challenge his termination and since that grievance had ultimately resulted in an "arbitrator's"[1] decision that the ter-

---

1. After an unsuccessful attempt to resolve the grievance at the local level, the parties went before the Michigan Joint State Cartage and Over-The-Road Arbitration Committee. See Article 44 Section 1 and Article 45 Section 1 of the Central States Area Over-The-Road Motor Freight Supplemental Agreement to the National Master Freight Agreement.

This committee consists of an equal number of union and management representatives. Art. 44 Sec. 1. After a hearing, this committee ruled that "The discharge of Jesse Becton is upheld inasmuch as it was his second flagrant disobeying of orders penalty." Later, when the grievant claimed to have discovered new evidence, an additional hearing was held after which the committee reaffirmed its decision to deny the grievance.

By the terms of the contract, the decision of the committee was "final and binding on both parties." Art. 45 Sec. 1(a). While a committee made up of persons hand picked by labor and management is not exactly the same as an independent arbitrator, the decision of such a committee, when made binding upon the parties by their collective bargaining agreement, is entitled to exactly the same deference as that given to a decision of such an independent arbitrator. *General Drivers Local 89 v. Riss & Co.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963); 29 U.S.C. § 173(d), (e).

It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties. If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal

mination was based upon just cause, the court must determine the weight to be given to the "arbitrator's" decision.

The question presented at this point is whether, and to what extent, the decision of an "arbitrator" that a termination decision was founded upon just cause may be used by an employer in defending a subsequent employment discrimination lawsuit.

The feasible alternatives are these. The court may find that the "arbitrator's" decision is binding upon the court insofar as it found just cause for the termination. At the other extreme, the court may find that the "arbitrator's" decision should not be considered at all by the decision maker in the subsequent lawsuit. If neither of these decisions is deemed appropriate, the court may find some middle ground such that the "arbitrator's" decision is given some weight but is not conclusive.

The starting point for the analysis of the question presented must be the Supreme Court case of *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In that case, the Court held that in an employment discrimination suit under Title VII where, pursuant to a collective bargaining contract, a grievance had gone to arbitration and an arbitrator had determined that there was no racial discrimination involved in the employment decision that was being challenged, the court should make a *de novo* determination of the plaintiff's discrimination claim. The Court adopted no standards as to the weight to be accorded an arbitral decision. It indicated that each time a court is presented with this problem, it should take into account the facts and circumstances of the case before it. The court should then give the decision whatever weight it deserves, keeping in mind the degree to which the particular arbitral proceeding resembled a legal proceeding along with the fact that Congress made it the duty of the courts to make the ultimate decisions in employment discrimination claims. *Id.* at 60, 94 S.Ct. at 1025.

A close reading of the opinion makes it clear that the Court was interested in (a) making certain that courts were the ultimate decision makers in Title VII employment discrimination cases and (b) taking care not to create a disincentive to disgruntled employees to seek a resolution of the ultimate issue of discrimination through contractual grievance procedures which ordinarily include arbitration.

The Court was asked to hold that an employee who chooses to put the issue of employment discrimination before an arbitrator as a part of the grievance procedure waives his right to have the decision made by the courts. The Court indicated that such a holding might lead employees to bypass grievance procedures altogether. The Court then repeated its preference for contractual grievance proceedings over judicial proceedings as a way to resolve employee-employer disputes in general and, in effect, gave to persons who claim to have been discriminated against by their employers in violation of Title VII, and whose employment contracts include some form of grievance procedures, two chances to convince a fact finder that discrimination was at least a contributing factor in the employer's decision. In other words, the Court held that by processing a grievance one did not waive the right to sue under Title VII.

The case at bar presents a situation which is different from that presented in *Gardner-Denver* in a way that gives this court an opportunity to examine the outer limits of the doctrine announced in *Gardner-Denver* and to continue the process of developing the appropriate relationship between "arbitration" (based on private contracts) and judicial litigation (based on congressional action). Here, the "arbitrator" was not presented with and made no decision concerning the question of whether or not race was a factor in the employer's decision in this instance. All that the "arbitrator" was

---

labor policy encourages that procedure no less than arbitration. A determination made pursuant to that chosen procedure is no less enforceable in a federal court than is an arbi-

tration award. *United Mine Workers v. Barnes & Tucker Co.*, 561 F.2d 1093 (3rd Cir. 1977).

asked to do and did do was to examine the facts along with the provisions of the collective bargaining contract between the company and the plaintiff's union and to decide whether the action taken by the company was justified.

The court is not called upon in this case to abdicate its duty to make the ultimate decision as to the existence of racial discrimination; it is asked only to defer to the arbitral determination on the issue of just cause when an "arbitrator" has determined that there was just cause under the contract for the plaintiff's termination. *Gardner-Denver* stands for the proposition that a court may not let an "arbitrator" decide for it the issue of discrimination; neither the words of the opinion nor the reasoning behind it would justify the extension of the rule applied there to cover the situation presented here, where findings essential to the "arbitral" determination did not directly involve a finding of discrimination or no discrimination.

To rule that the court must consider the issue of just cause for termination on a *de novo* basis in this case would be to needlessly emasculate the arbitral process and to pass up an opportunity to conserve judicial resources.

When the parties to a dispute have, by virtue of the collective bargaining process, agreed to a contract calling for "arbitration" of grievances, the law has looked with favor at arbitration as the final arbiter. As is evidenced by the Steelworkers Trilogy, this tradition has the unabashed approval of the Supreme Court. *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). To chip away at the finality of arbitral decisions any more than is made necessary by the legislature would be to lessen the importance of arbitration in the labor area and thus to destroy part of the carefully constructed system through which labor disputes are resolved. As the Steelworkers Trilogy pointed out, a system based upon arbitration will function smoothly only if the people involved have confidence in the decisions of the arbitrators, and this confidence will exist only to the extent that the arbitral decisions are given finality by the courts.

█ The rule in *Gardner-Denver* is an exception to the general rule of finality, and, as such, it must not be extended beyond its necessary reach. The Supreme Court has determined that in order to give full effect to the laws which prohibit employment discrimination, it is necessary to make a small exception to the finality generally accorded to arbitral decisions. It refuses to accord finality to an "arbitrator's" decision on the ultimate issue of discrimination when that issue is presented to a court under Title VII. Because the reasoning behind the *Gardner-Denver* exception does not necessitate an expansion of that exception to cover determinations made by "arbitrators" as to facts not involving findings relative to discrimination but which were the very essence of the claims there made, there is no need to undermine the confidence that people subject to arbitration have developed in it over the years with a further erosion of that finality.

The current draft of the Restatement (Second) of Judgments (Tent. Draft No. 7, 1980) bolsters this position as well. It recognizes that there is as much reason to preclude further litigation of a particular factual issue after that issue has been determined by an "arbitrator" as there is where the prior determination has been made by a court.

Section 132 of that draft provides as follows:

(1) Except as stated in subsections (2), (3) and (4), a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.

(2) An award by arbitration with respect to a claim does not preclude relitigation of the same or a related claim

based on the same transaction if a scheme of remedies permits assertion of the second claim notwithstanding the award regarding the first claim.

(3) A determination of an issue in arbitration does not preclude relitigation of that issue if:

(a) According preclusive effect to determination of the issue would be incompatible with a legislative policy or contractual provision that the tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question, or with a purpose of the arbitration agreement that the arbitration be specially expeditious; or

(b) The procedure leading to the award lacked the elements of adjudicatory procedure prescribed in § 131(2).

(4) When the terms of reference to an arbitration limit the binding effect of the award in another adjudication or arbitration proceeding, the extent to which the award has conclusive effect is determined in accordance with that limitation.

Thus, unless the situation before the court fits into subsections (2), (3), or (4), the Restatement's position would be that the "arbitration" award should be binding upon the parties insofar as it determined that the discharge of the plaintiff was made with just cause.

The exceptions to the general rule noted above are efforts to define accurately the situations in which the doctrine of preclusion or res judicata should not be followed. Subsection (2) suggests no preclusion when the parties have chosen not to make "arbitration" awards final. In this case the parties clearly intended such awards to be final. See *Central States Area Over-The-Road Supplemental Agreement to the National Master Freight Agreement*, Article 45, Section 1(a). Subsection 3(a) relates to the *Gardner-Denver* case and an effort to use the determination to bind the court on the issue of discrimination. Since the legislature had determined that it was for the courts to determine whether or not there had been discrimination, res judicata should

not apply. As noted above, there is no such legislative directive regarding the determination of whether or not there was just cause for a discharge. Subsection (4) is relevant only where the parties have themselves limited the future binding effect of the "arbitration" award. Here, nothing was done to change the general contractual rule of finality pointed out above.

Subsection 3(b) suggests the importance of making certain that the party opposed to the eventual ruling had a full and fair opportunity to present his evidence and arguments to the "arbitrator." This amounts to no more than elementary fairness. This elementary fairness requires:

(a) Adequate notice  .   .   .;

(b) the right  .   .   . to present evidence and legal argument  .   .   . and fair opportunity to rebut evidence and argument by opposing parties;

(c) A formulation of issues and law  .   .; [and]

(d) A rule  .   .   . specifying a point in the proceeding when  .   .   . a final decision is rendered  .   .   ..

Restatement (Second) of Judgments § 131(2) (Tent. Draft No. 7, 1980).

The "arbitration" in this case included each of these elements. The notice was sufficient and effective. Both sides had a full opportunity to present all of the evidence and argument that they chose to present. The plaintiff was represented by an effective and appropriate union official. The issues were clear to everyone. The contract provided that the decision became final immediately. The particular dispute was not so complex that any extraordinary procedural protections were necessary and was not so urgent that any ordinary procedures were bypassed.

The drafters of the Restatement have made it clear that, in their opinion, the general rule is that prior "arbitral" awards are to be given full force in the courts. It is for the party attempting to avoid this general rule to show to the court good reason for the establishment of an excep-

tion. No exception has been established in the case at bar.

While the intentions of the parties are of utmost importance, all of the other reasons that have led our society to prefer "arbitration" over judicial litigation in solving labor disputes must be kept in mind here as well. "Arbitration" is considered to be a superior forum for the resolution of these disputes because it can work more quickly, more informally, and more efficiently, given the limited range of disputes that are subject to it. See *United Steelworkers v. Warrior & Gulf Navigation Co., supra.* Everyone involved is harmed by the duplication of effort if the court must address and redetermine issues already decided by an "arbitrator" that do not directly involve the claim of discrimination. In addition to considering the harm that is caused to the parties, one must also consider the fact that the time spent by a court in addressing these issues is time that it is prevented from spending on all of the other cases before it. In this way, society as a whole is injured. This result must be ardently opposed.

Because the *Gardner-Denver* exception to the general rule of finality need not be extended to the situation before the court and for all of the reasons which support the general rule of finality, the "arbitrator's" determination that there was just cause for the termination which forms the basis of this lawsuit is binding upon the plaintiff, the defendant, and this court.

For these reasons, the court need not consider the evidence presented to it on this issue. To the extent that the defendant has been called upon to produce evidence of just cause for termination, the arbitral decision will suffice. The inquiry now turns to the question of whether the plaintiff has shown that the just cause that did exist was merely a pretext to cover up what was in reality a racially discriminatory termination. Only by such a showing can the plaintiff prevail in this action.

The court finds from the evidence produced in this case that the discharge was not a pretext to cover up racial discrimination nor was racial animus involved in the discharge.

The court finds that, although the plaintiff had filed other civil rights claims and asserted his civil rights in other contexts, the defendant did not act by way of retaliation in discharging the plaintiff.

In summary then:

1. The plaintiff belongs to a racial minority.

2. He was discharged from his job.

3. His position was filled.

4. An "arbitrator" provided by the collective bargaining contract found that there was just cause for his discharge.

5. The grievance was fairly and fully presented at the various levels on behalf of the plaintiff.

6. The decision of the "arbitrator" on this was unequivocal and will be applied by this court on this narrow issue only.

7. No pretext was involved in the discharge to cover up racial discrimination.

8. The discharge was not made to retaliate against the plaintiff for filing civil rights claims or asserting his civil rights in other contexts.

For the reasons stated above, both counts of the plaintiff's case against the defendant employer are dismissed.

Final judgment should be entered against the plaintiff and in favor of both defendants.

So ordered.