Shirley A. PIPPIN, Plaintiff,

v.

**UNITED STATES TRUCK COMPANY, INC., Defendant.**

Civ. A. No. 79–71619.

United States District Court,
E. D. Michigan, S. D.

Aug. 12, 1981.

Alan Kaufman, Detroit, Mich., for plaintiff.

Wayne G. Wegner, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

ANNA DIGGS TAYLOR, District Judge.

Plaintiff's complaint, alleging an unlawful sex-discriminatory discharge by defendant, United States Truck Co. (hereinafter "U. S. Truck"), was filed May 18, 1979. Her complaint to the United States Equal Employment Opportunity Commission ("EEOC") had been filed September 10, 1976. On February 23, 1979, after investigation, the EEOC had determined that there was no reasonable cause to believe that plaintiff had been discharged from employment from the defendant U. S. Truck because of her sex, and issued a notice of Right to Sue.

In her original pro se complaint, the plaintiff's claim rested upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. A subsequent amended Complaint added allegations of breach of the duty of fair representation by Local 299, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, Helpers of America, pursuant to 29 U.S.C. § 411(a)(4), and of the breach of a Collective Bargaining Agreement by the employer, U. S. Truck, pursuant to 29 U.S.C. § 185. On May 21, 1981, this court granted defendants' motions for summary judgment on the amended portions of plaintiff's complaint.

This court's jurisdiction is proper under 42 U.S.C. § 2000e, et seq., Title VII of the Civil Rights Act of 1964. The essence of plaintiff's complaint is that she was treated disparately from and less favorably than an allegedly similarly situated male employee. Although both plaintiff and the male were discharged by the employer for assaultive conduct, the male was later reinstated by the defendant employer, pursuant to the award of an arbitration panel, and plaintiff herein was never reinstated.

Trial was held to this court for two days commencing June 3, 1981. Plaintiff's case in chief included her own testimony, the testimony of the Labor Relations Specialist of the defendant, and of the supervisor who allegedly initiated the altercation which led to plaintiff's termination. At the close of the plaintiff's case the defendant moved for a dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. That motion is hereby granted.

For purposes of a Rule 41(b) motion, the court is not to view the evidence in the light most favorable to plaintiff, as is required on motion for directed verdict in a jury case. The court, as trier of fact on a 41(b) motion, is to weigh the evidence and resolve any conflicts and questions of credibility presented. 5 Moore's Fed.Pract. ¶ 41.13[4] at 41–193 (1979). This court, having weighed the evidence presented by this plaintiff's case in chief and having satisfied itself that the plaintiff has had a full and fair opportunity to present her case, must grant the defendant's motion for dismissal under Rule 41(b). It is clear, on the facts presented by her case-in-chief, and applicable law, that plaintiff has no right to relief. *Simpson v. United States*, 454 F.2d 691 (6th Cir. 1972). In her case in chief, she has established that her discharge did not constitute disparate treatment, and that the defendant employer's articulated business reasons for the discharge were not pretextual but legitimate.

The starting point for our analysis of the facts of plaintiff's claim of disparate treatment must be *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1971). In *McDonnell Douglas* the Supreme Court defined the burden and order of proofs in a Title VII disparate treatment case. They are: (a) the plaintiff has the initial burden of establishing, by a preponderance of the evidence, a prima facie case of a discriminatory disparity; (b) if the plaintiff succeeds in proving a prima facie case, the defendant is then required to articulate some legitimate, nondiscriminatory reason for disparity; (c) the plaintiff then must prove, by a preponderance of the evidence, that the legitimate reasons offered by the defendant were not its actual reasons, but were in fact pretextual for unlawful discrimination. The ultimate burden of proof of discrimination always rests with the plaintiff. In a disparate treatment discharge case, plaintiff's prima facie

case should include proofs that he or she was a member of a minority or protected class, that he or she performed satisfactorily, that he or she was discharged in spite of that performance, and that he or she was replaced, if at all, by a non-minority employee. *Flowers v. Crouch-Walker*, 552 F.2d 1277 (7th Cir. 1977). By that standard plaintiff here, therefore, had the burden of proving that she was a woman, that she performed satisfactorily on her job and was discharged at least partially for reasons not related to her job performance, and that she was replaced, if at all, by a male. The parties stipulated at trial that the plaintiff was not really replaced, but that the woman which she would have otherwise bumped retained her position.

The Supreme Court, in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), has clarified the holding of *McDonnell Douglas.* The plaintiff's initial burden is to produce enough evidence to raise the rebuttable presumption that the reason for her discharge was at least partially based on impermissible considerations. The claim is otherwise subject to dismissal as she has not focused the inquiry into the elusive factual question of intentional discrimination. At 255, n.8, 101 S.Ct. at 1094, n.8.

Where a claim of disparate treatment has been alleged the plaintiff's prima facie case may consist of facts sufficient to sustain the inference that the challenged actions of the employer were motivated by impermissible considerations. *Mosby v. Webster College*, 563 F.2d 901 (8th Cir. 1977). A prima facie case may be made by proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that such actions, more likely than not, were bottomed on impermissible considerations. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

On the basis of the law outlined above, and the findings of fact set out below, this court finds that the plaintiff has not made a prima facie case on the preponderance of all of the evidence presented by her case in chief (which included the explanations of the defendant employer) that the defendant unlawfully discriminated against her on the basis of her sex. Moreover, assuming *arguendo* that the plaintiff did meet her burden, the defendant has articulated legitimate nondiscriminatory reasons for her discharge through the testimony of its agents under plaintiff's cross-examination; and plaintiff has established, in her own case, that the articulated reasons were not a pretext for unlawful discrimination.

Plaintiff was employed by defendant from October of 1968 to June of 1976. The testimony presented indicated that she had a generally good work record, although she had incurred minor infractions of company rules, prior to her termination. She was employed in the main terminal facility of the defendant as a billing and tracing clerk. Her duties included the preparation of bills of lading and manifests for goods shipped by U. S. Truck and the tracing of lost shipments. She was employed on a day shift from 8:00 a. m. to 5:00 p. m. She was also a union steward.

On May 28, 1976, the plaintiff left the terminal facility after her regular shift had ended and proceeded to a neighborhood tavern which was frequented by U. S. Truck employees. There she testified that she had a couple of drinks, but did not become intoxicated. At approximately 10:00 that evening she testified that she received a telephone call at the bar from an unidentified co-worker on the evening shift who requested that she return to the terminal facility to discuss certain upcoming layoffs and the bumping rights of employees in the clerical bargaining unit, for which she was steward.

The plaintiff returned to the terminal facility where she met with a group of evening shift billing clerks and discussed the contract rights applicable to layoffs. While she was talking with those employees, her presence was noted by billing department supervisor John Codd. Mr. Codd's duties included obtaining manifests and bills of lading for loading trucks from

the clerks. He testified that he was concerned about the cessation of work during the discussion period. Mr. Codd knew that the plaintiff was a day shift employee but was present as a steward on union business, and did not interrupt the discussion so long as it appeared to center upon such business, despite the fact that defendant's trucks were loading and could not leave the terminal without the manifests, the preparation of which had halted.

After several return trips to the billing office, it became apparent to Mr. Codd that the plaintiff was no longer discussing union business with the clerks. The meeting had become a social occasion. He approached the plaintiff and requested that she leave, as her presence was disrupting the flow of work in the tracing and billing office. The plaintiff left the terminal. Fifteen minutes later, however, plaintiff returned to the terminal. She waited outside and sent a friend in to tell Mr. Codd to step out onto the front porch, where she told him to apologize to her for the disrespectful language which he had allegedly used in addressing her earlier. He refused. The plaintiff, who at the time was 5′ 2″ tall and weighed 300 pounds, struck Mr. Codd, who stood 5′ 8″ tall and weighed 245 pounds, "two or three times" (according to her own testimony), knocking him down against the loading dock door, breaking his glasses, and injuring his nose. In response to the blows, he lay against the door with his arms and legs drawn up in front of him. The plaintiff left the premises. The police were called, but Mr. Codd subsequently refused to press charges against plaintiff. Plaintiff's testimony differed from Codd's in that she testified that Codd flew into a rage and struck her first, upon stepping out onto the porch. The court finds Mr. Codd's version of the altercation more credible, however, in view of all of the undisputed surrounding facts and circumstances. Those include the four or five hours plaintiff had spent drinking at the bar; the fact that she returned after being ejected from the terminal facility and demanded to see Codd *on the porch*, rather than in the office; and the fact that he undisputedly crouched on the ground and

hid his face with his knees up when the blows began to fly. All of these facts support the finding that the plaintiff was, indeed, the aggressor.

On June 1, 1976, the plaintiff received a telegram from defendant informing her of her discharge for fighting on company property, pursuant to "Rule 2–G of the Michigan Office Workers' Uniform Rules and Regulations," specifically, "Fighting on Company Premises or on Duty." The telegram further advised that a letter would be forthcoming and was indeed followed by certified letter to the same effect.

Plaintiff filed a timely grievance for wrongful discharge, pursuant to the Teamsters National Master Freight Agreement and Office Workers' Supplement. The grievance was denied at all internal levels, and was referred to binding arbitration before the Industry Joint State Committee on Arbitration, which held a hearing in the matter. The Joint State Arbitration Committee consists of equal numbers of employer and union representatives, consisting of a group not less than three from each side. The committee has general rules to govern its procedures which provide both the grievant and the employer the opportunity to present arguments and evidence, and to rebut the evidence and arguments presented by the other side. The procedures are designed to insure a full and fair hearing on the merits of a dispute. Article 4, § 5(a)(b).

Plaintiff was represented at the hearing by an agent from her Local and by privately retained counsel, and was given the opportunity to present testimony and arguments. The finding of the Joint Committee was as follows:

> The discharge of Shirley Pippin is upheld based on the fact that she returned to the company premises after being asked to leave by a supervisor and on her return to the company premises, precipitated an altercation with a supervisor by calling him out of the office and assaulting him. The evidence revealed that the supervisor was struck several times by the grievant and that the blows were not in self defense.

Plaintiff's claim of disparate treatment centers upon the allegedly more favorable treatment accorded by defendant to a similarly situated male employee, James Lawson. Mr. Lawson had reported to work on April 26, 1976, in what appeared to be a condition of intoxication. Before he succeeded in punching his time card the defendant's President asked him to leave the premises. Mr. Lawson then attempted to assault the President, but was restrained by a co-worker. Mr. Lawson was discharged by defendant for gross insubordination, and his grievance, like this plaintiff's, went all the way to the Joint Arbitration Committee pursuant to the contract applicable to his unit, which was the Central States Supplement to the Teamsters Master Freight Agreement. He was not an office worker. Also, his contract provided no specific discharge penalty for fighting. The Arbitration Committee reinstated Mr. Lawson, without back pay. The mitigating factors which were presented on his behalf, or indeed the particulars of his history which led to the decision, are all unknown to this record. Defendant's Labor Relations Director, Kenneth Page, who was called in plaintiff's case in chief, explained that insubordination was not listed as cause for discharge in Mr. Lawson's contract and that the Arbitration Panel had also ruled in a case preceding Mr. Lawson's that the employer was not justified in discharging for that offense.

It is clear, nevertheless, that defendant treated plaintiff no differently than it did Mr. Lawson, even if it be assumed that they were similarly situated. In both cases the employee was immediately discharged and his or her grievance denied and taken to binding Arbitration, at risk to the defendant employer of substantial back pay liability. If the Arbitration Committee had ordered this plaintiff reinstated, there is no suggestion that defendant would not have complied forthwith.

It is clear from the testimony presented by plaintiff that the company had discharged employees of either sex for assaultive conduct on company premises. *Centenio v. Helena Garment Co.*, 475 F.Supp. 25 (E.D.Ark.1979). *Centenio* involved a fact situation analogous to that presented here. In *Centenio* the plaintiff alleged that she had been discharged for fighting on company premises whereas men presenting worse conduct were not discharged, all in violation of Title VII. There, Senior District Judge Oren Lewis in ruling on defendant's motion for summary judgment noted that:

> This court is of the opinion that a company does not violate Title VII by discharging both women and men employees who engage in fighting on company premises. It is a business necessity for the employer to have the right to control the conduct of their employees during business hours on company premises, in order to ensure a proper working environment. No evidence has been presented to. show that male and female employees are treated differently when disciplined for fighting. *Id.* at 27.

Plaintiff in the case at bar has not presented any evidence of a type that would indicate the company treated her differently than a man, under the same circumstances. The plaintiff, thus, has failed to show any relationship between her discharge and her status as a woman. Accordingly, she has not made a prima facie case of discrimination, and has further demonstrated the legitimacy of the business reasons articulated by defendant for her discharge.

Plaintiff further argues that it was virtually impossible for her to receive a fair evaluation of her grievance because the Joint Arbitration Committee which met to decide her fate was composed entirely of men. She also argues that in situations in which a supervisor and an employee present conflicting testimony, the supervisor's testimony is uniformly presumed by the Arbitration Committee to be more credible than that of the employee, again placing the employee at an unfair disadvantage in making her case. Apart from the fact that these arguments partially present issues

previously resolved by this court,[1] it is inappropriate, absent any supporting evidence, to create presumptions of unfairness in a committee composed of members of one sex which decides the grievance of a member of the opposite sex. Nor can this court accept the argument, without a whit of supporting evidence, that supervisors are always credited over employees. Without evidence to the contrary, we must presume that the Arbitration Committee performed the duties of their office as required by the Agreements. There has been no indication in the record that the men involved were prejudiced against plaintiff because of her sex; nor has there been any evidence to indicate that the arbitrators representing the union blindly accepted the word of Mr. Codd over that of its own members.

Assuming, arguendo, that the plaintiff met her initial burden of proof, enough evidence was presented during her own case in chief to negate any inference of discrimination. *Becton v. Detroit Terminal,* 490 F.Supp. 464 (E.D.Mich.1980). In *Becton* Judge Joiner undertook an extensive discussion of the weight to be given an arbitrator's decision finding that an employee had been discharged for just cause in a subsequent employment discrimination suit in a judicial forum. Judge Joiner noted that the arbitrator's decision should be given full force and effect in the judicial forum, unless the trier of fact is satisfied that certain elements of fundamental fairness were lacking in the arbitrial process. Those elements of fundamental fairness were present here. Ms. Pippin was given adequate notice before the Joint Arbitration Committee met to prepare her case; both sides had the opportunity to present evidence and make legal arguments; and plaintiff was represented by counsel at the proceeding, in addition to a union representative. In addition, this court notes that as a union steward herself, she was well

aware of her rights. The issues presented by her case were clear, and the contract provided that the decision of the Committee was to be final. The defendant employer was required by contract and law to submit to the arbitral process and its decision, once that process was initiated by the union.

The defendant employer has requested an award of attorneys' fees, as the prevailing party herein. In *Christiansburg v. Equal Employment Opportunity Commission,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court addressed the standard to be applied by a District Court to the request of a prevailing defendant in a Title VII action for attorneys' fees. The Supreme Court cautioned District Courts to consider the twin purposes of the attorneys' fees provisions: facilitation of meritorious actions by plaintiffs of limited means, and deterrence of frivolous actions. The court noted that where it was clear that the plaintiff's cause of action was frivolous, unreasonable, and without foundation, attorneys' fees may be awarded to the defense even in the absence of plaintiff's subjective bad faith. *Id.* at 414, 98 S.Ct. at 696.

While it is clear that the defendant has prevailed in the case at bar, it does not necessarily follow that attorneys' fees should be awarded for the failure of the plaintiff to meet her prima facie burden of proving discrimination. Defendant forcefully argues in its brief that the failure of the plaintiff to meet her prima facie case entitles it to attorneys' fees. This argument missed the point. As the Supreme Court noted in *Christiansburg*:

[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a

1. This court earlier granted summary judgment against plaintiff's claim of unfair representation by Local 299 of the International Brotherhood of Teamsters and employer breach of the Collective Bargaining Agreement. In dismissing plaintiff's actions this court found that on the undisputed facts the plaintiff was fairly represented by her union, and that the employer had not breached the collective bargaining agreement. *Pippin v. U. S. Truck,* # 79–71619 (Order granting defendants' motion to dismiss claims of unfair representation and employer breach of collective bargaining agreement, entered April 22, 1981).

prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable .... Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit. *Id.*, at 421, 422, 98 S.Ct. at 700–701.

The argument made by the defendant in his request for attorneys' fees advances the logic against which the Supreme Court has cautioned. Although plaintiff here was unable to present enough evidence to allow this court to find that she had been the victim of discriminatory treatment, this failure does not translate into a finding of frivolity, and this court indeed finds that plaintiff's claim was not a frivolous one but was colorable in the law.

On the basis of the findings of fact and conclusions of law outlined above, plaintiff's complaint is ordered, and hereby is, dismissed. Costs, but not attorneys' fees, are awarded to defendant.

IT IS SO ORDERED.