Ruby HOWARD, Plaintiff,

v.

**Harvey HOLMES c/o the New York Times, Defendant.**

No. 86 Civ. 0913 (GLG).

United States District Court,
S.D. New York.

March 27, 1987.

---

Ruby Howard, pro se.

Cahill Gordon & Reindel, P.C., New York City (H. Richard Schumacher, John J. Stanton, Patricia Dobberstein, and Marcijane Kraft, Labor Counsel, The New York Times Co., New York City, of counsel), for defendant.

.OPINION

GOETTEL, District Judge.

Plaintiff Ruby Howard was employed by The New York Times ("The Times") from 1969 until she was discharged in 1985. She brings this action against Harvey Holmes, a department manager at The Times, alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1982). The Times [1] moves for judgment on the pleadings or, alternatively, for summary judgment.

*Background*

In 1969, the plaintiff began working for The Times as a secretary in the Editorial Department. She remained in that position until November 1972, when she applied for and received a transfer to the Index Department, first as a secretary and later as a copy checker. In 1975, the plaintiff and two other employees were given an opportunity to try out for the higher paying position of assistant indexer. The plaintiff was unsuccessful, and resumed her position as a copy checker. Shortly thereafter, the plaintiff filed charges with the New York City Commission on Human Rights ("CCHR") and the federal Equal Employment Opportunity Commission ("EEOC"), alleging that The Times had refused to promote her to the assistant indexer position because of her race and color.

The CCHR investigated the charges, and dismissed them as baseless in early 1976. The plaintiff pursued an appeal within the CCHR, but was unsuccessful. The EEOC reviewed the CCHR findings and issued a "Determination" that there was no reasonable cause to believe the plaintiff's charges were true. The EEOC advised the plaintiff that she was entitled to receive a Right to Sue Letter,[2] which was issued to her. However, the plaintiff did not initiate a civil action at that time.

The plaintiff continued to work as a copy checker until December 1977, when The Times eliminated that position, replacing it with automated procedures. The Times, however, offered the plaintiff a position as

---

**1.** The complaint filed with the EEOC, for which a Right to Sue Letter was issued, names both The New York Times and Harvey Holmes as respondents. The judicial complaint names the defendant as "Harvey Holmes c/o The New York Times." The Times, however, as the "employer" pursuant to 42 U.S.C. § 2000e(b) (1982), is the actual defendant.

**2.** A Right to Sue Letter is a prerequisite to filing a judicial complaint in federal district court. If a charge filed with the EEOC is dismissed, or if, within 180 days from the date of filing, the EEOC fails to take action on it, the claimant may request a Right to Sue Letter from the EEOC. If suit is not brought within 90 days of receipt of a Notice of Right to Sue, the right to bring an action is lost. 42 U.S.C. § 2000e–5(f)(1) (1982).

an index clerk, which she accepted. This is normally a lower-salaried position than that of copy checker. But, pursuant to the collective bargaining agreement between The Times and The Newspaper Guild ("The Guild"), the plaintiff continued to receive her former salary and benefits.

Beginning in September 1981, and continuing for the next several years, the plaintiff was given numerous disciplinary warnings and at least two periods of suspension for insubordinate behavior. On December 19, 1984, the plaintiff again filed charges with the EEOC and CCHR. This time she alleged she was being disciplined in retaliation for the racial discrimination charges she filed against The Times in 1975. She specified the following actions as the basis for her retaliatory discrimination claim: (1) The Times' continuing refusal since 1975 to promote her to the position of assistant indexer; (2) her "demotion" to index clerk in 1977; (3) a bad reference allegedly given by The Times on an unspecified date; (4) a disciplinary memorandum from plaintiff's supervisor dated October 13, 1984, warning her about her work performance; and, (5) a two-week disciplinary suspension of plaintiff, which began on October 16, 1984.

On August 6, 1985, the plaintiff's employment at The Times was terminated for "gross insubordination." Soon thereafter, the plaintiff sought relief pursuant to the grievance/arbitration procedure of the Times-Guild collective bargaining agreement. Additionally, at the request of the plaintiff, the EEOC issued a Right to Sue Letter on November 4, 1985.[3] The plaintiff

filed this action in January 1986. The judicial complaint reiterates the five allegations filed with the CCHR and the EEOC. It also alleges that her termination in August 1985 was in retaliation for the earlier charges of racial discrimination.[4]

In February 1986, the plaintiff's grievance, challenging her discharge and other alleged adverse employment actions by The Times, proceeded to arbitration. The arbitrator was jointly selected by the parties. Both the plaintiff and The Times were represented by counsel. The plaintiff attended all of the sessions, testified under oath on her own behalf, and was cross-examined. During the course of the arbitration proceeding, The Times presented documentary evidence demonstrating the extent of the plaintiff's disciplinary record. The arbitrator received this evidence without objection from the plaintiff's counsel.

On July 7, 1986, the arbitrator issued his decision, finding that the plaintiff's discharge for gross insubordination was for good and sufficient cause.[5] The arbitrator concluded as follows:

> If the August 5–6, 1985 incidents were viewed in isolation, discharge would clearly be an excessive penalty. For there would be no reason to blow Ms. Howard's actions out of proportion. The fact, however, is that the incidents do not stand alone. They must be viewed in the context of her overall record.
>
> This certainly was not Ms. Howard's first brush with managerial authority. She has been disciplined on a number of occasions in the last four years of her employment. She was suspended in Sep-

---

**3.** Neither the EEOC nor the CCHR had investigated the plaintiff's charges when she requested her Right to Sue Letter.

**4.** The claim of retaliatory discharge was not included in the charges filed by the plaintiff with the EEOC in 1984. However, this Court may exercise "jurisdiction ... over all claims encompassed within the EEOC charge and like or related matters which might reasonably be expected to be subject to an EEOC investigation growing out of the charge." *Flesch v. Eastern Pennsylvania Psychiatric Institute,* 434 F.Supp. 963, 970 (E.D.Pa.1977) (citations omitted). Further, the "rule is broad enough to include claims arising from new acts occurring during the

pendency of the EEOC charge and reasonably related to or growing out of acts alleged in the charge." *Id.* The allegation of discriminatory discharge, which occurred after the plaintiff filed charges with the EEOC, is reasonably related to and flows from the original retaliatory discrimination claim filed with the EEOC. Therefore, this Court will assert jurisdiction over the *pro se* plaintiff's charge of discriminatory discharge.

**5.** The collective bargaining agreement specifies that a discharge, or any other challenged employment action, is permissible only upon "good and sufficient cause."

tember 1981. She was suspended for two weeks in April 1984. She was suspended for four weeks in October 1984. (The suspension was later reduced to two weeks.) She has, in addition, been issued a number of written warnings. The most recent was on March 4, 1985. At that time, she was clearly cautioned that if she was "guilty of any acts of insubordination in the future [she] will be instantly discharged." She was told then that if she objected "to any orders you will be expected to do the job and then file any grievances or complaints with [her] union representative."

Ms. Howard, in short, has been subjected to progressive discipline. It was designed to correct her pattern of behavior at work. It has not proved successful. She simply has not responded well to the Company's corrective approach.

The Company, in my view, had "good and sufficient cause" to discharge her. If I believed there was any likelihood that she had learned a lesson, that she would comport herself properly in the future, I would be inclined to direct she be reinstated. However, I am convinced that no such likelihood exists. Ms. Howard, in my judgment, is incapable of curbing herself. She seems unable or unwilling to comport herself as a responsible employee. Under the circumstances, I am constrained to conclude the Company had "good and sufficient cause" to discharge her.

Decision of Arbitrator, pp. 19–20, annexed as Exhibit 7 to Affidavit of John J. Stanton.

After the arbitrator reported his decision, The Times moved for judgment on the pleadings in this action or, alternatively, for summary judgment. The defendant argues that the allegations of failure to promote in 1975 and demotion to index clerk in 1977 are barred by the statute of limitations. Further, The Times argues that it is entitled to summary judgment on the plaintiff's remaining allegations because the plaintiff fails to establish the requisite elements of a claim of retaliatory discrimination.

## Discussion

For an alleged act of discrimination to be actionable under Title VII, the act complained of must have occurred within 300 days of the filing of charges with the EEOC. 42 U.S.C. § 2000e–5(e) (1982). The failure to promote, which plaintiff alleges was discriminatory, occurred in 1975, while the allegedly retaliatory demotion occurred in 1977. Both of these incidents are well outside the statute of limitations period, and are, therefore, dismissed as time barred.

The Times moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) or, alternatively, for summary judgment. Fed.R.Civ.P. 56. We treat this as a motion for summary judgment because matters outside the pleadings have been presented to the Court.

Initially, the party moving for summary judgment must demonstrate an absence of any genuine issue of material fact. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1355 n. 10, 89 L.Ed.2d 538 (1986). If this showing is made, the burden shifts to the non-moving party to come forward with specific facts showing a genuine issue of material fact. Although references drawn from the underlying facts must be viewed most favorable to the non-moving party, *id.* at 1356–57, the mere existence of some alleged factual dispute will not defeat a motion for summary judgment. The facts in dispute must be material, *i.e.*, facts that might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only if the non-moving party fails to present evidence that raises "a sufficient disagreement to require submission to a jury," may summary judgment be properly granted to the movant. *Id.* at 2512.

The Second Circuit recently held that summary judgment is available in discrimination suits brought under Title VII, even though there may be issues of intent. The summary judgment rule would become sterile if the mere incantation of "intent" operated to defeat an otherwise valid mo-

tion. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985). Further, the purpose of summary judgment is to avoid expensive and harassing trials, and a party opposing a motion for summary judgment risks the possibility there will be no trial if she saves the evidence for trial. *Id.* at 998. Purely conclusory allegations of discrimination, absent any concrete particulars, are insufficient to defeat a motion for summary judgment. *Id.*

The last point noted above aptly describes the plaintiff's allegation that, in retaliation for filing the earlier charges of racial discrimination, The Times gave her a "bad reference." The plaintiff provides no details about this alleged incident, neither when it occurred nor to whom the information was supposedly given. The Times, however, presents affidavits stating that the only references it provides for former employees consist of employment dates and job title. Further, The Times, through affidavits, states that personnel records kept in the ordinary course of business indicate no request for a reference for the plaintiff. In response to this showing, the plaintiff's mere allegation of a bad reference fails to establish a genuine issue of material fact. Hence, The Times is entitled to summary judgment on the plaintiff's "bad reference" claim.

■ A claim of retaliatory discrimination is evaluated in three steps. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish a *prima facie* case of retaliatory discrimination. If the plaintiff successfully raises an inference of retaliatory discrimination, the burden then shifts to the defendant to rebut that inference by articulating a legitimate, non-discriminatory reason for the challenged employment actions. Once this has been done, the plaintiff must demonstrate that the articulated reasons are a mere pretext for discrimination.

*1. Prima facie case.*

■ To establish a *prima facie* case of retaliatory discrimination, the plaintiff must show that (a) she engaged in protected activity, such as filing discrimination charges against the employer; (b) the employer was aware of this; (c) the employer thereafter took some adverse action against her; and (d) a causal connection exists between her participation in the protected activity and the adverse employment action. *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 46 (2d Cir.1980). *See Davis v. State University of New York,* 802 F.2d 638, 642 (2d Cir.1986). In the instant case, it is undisputed that, in 1975, the plaintiff filed charges of racial discrimination with the EEOC and the CCHR against The Times, the latter was aware of those charges, and adverse employment actions were taken. However, we question the adequacy of proof on the final element required for a *prima facie* case.

■ A causal connection between the protected activity and the alleged retaliatory action may be demonstrated by evidence of circumstances that justify an inference of a retaliatory motive, such as protected activity *closely* followed by adverse actions. *See Burrus v. United Telephone Co. of Kansas,* 683 F.2d 339, 343 (10th Cir.1982). However, the plaintiff's protected activity took place in 1975 and the alleged retaliatory discrimination occurred ten years later. In view of this span of time, the causal connection is broken unless the plaintiff has additional evidence to the contrary. The plaintiff has failed to make such a showing. Her conclusory allegations of retaliatory animus are insufficient to raise an inference of retaliatory discrimination and, therefore, a *prima facie* case has not been established. However, because the plaintiff appears *pro se,* we hesitate to dismiss her action on this facial insufficiency. We will, therefore, assume *arguendo* that the plaintiff has established a *prima facie* case, and turn to the other considerations in evaluating her discrimination claim.

*2. Defendant's rebuttal.*

■ If we assume that the plaintiff has established a *prima facie* case, the burden shifts to the defendant to state a legit-

imate, non-discriminatory reason for its actions. The Times cites numerous incidents of disciplinary actions imposed on the plaintiff over a prolonged period of time. In September 1981, the plaintiff was suspended for three days without pay for insubordination; in October 1983, she received a written disciplinary warning for remarks made about her immediate supervisor, Phyllis Colazzo; in November 1983, a disciplinary memorandum was sent to the plaintiff warning her that she would be dismissed if she continued making unprovoked outbursts and unsubstantiated charges; also in November 1983, she received a written disciplinary final warning directing her to follow office rules on pain of dismissal; in April 1984, the plaintiff was suspended without pay for insubordination; twice in August 1984, the plaintiff was reprimanded for leaving work early without permission; in October 1984, the plaintiff received the disciplinary warning memorandum and the two-week suspension that she challenges in the instant action; in January 1985, the plaintiff received a disciplinary warning for disobeying office rules; in February 1985, in a meeting attended by the plaintiff, The Guild, and The Times, she was given a final disciplinary warning, and received a written confirmation of it in March 1985; and, finally, on August 6, 1985, the plaintiff was discharged for gross insubordination.

In addition to the plaintiff's disciplinary record, the defendant cites the decision of the arbitrator as evidence that its actions were legitimate and non-discriminatory. While we are not bound by the arbitrator's decision, it is admissible as evidence and may be accorded such weight as the Court deems appropriate. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60, 94 S.Ct. 1011, 1025, 39 L.Ed.2d 147 (1974). We find compelling the arbitrator's decision that the plaintiff was dismissed for cause and not for reasons of discrimination. We further conclude that it adds great weight to the other documentary evidence submitted by The Times.

3. Showing of pretext by plaintiff.

To the extent the defendant, as here, substantiates a legitimate, non-discrimina-tory reason with a factually supported basis, such as documentary evidence, the plaintiff's task of showing pretext will be more difficult. *See Wade v. New York Telephone Co.*, 500 F.Supp. 1170, 1178 (S.D.N.Y.1980). In *Wade*, the defendant employer's articulation of a legitimate, non-discriminatory reason for the alleged acts of racial discrimination were factually supported with affidavits, an arbitral decision, and an EEOC determination that there was no reason to conclude the plaintiff's allegations were true. The plaintiff did not submit any proof or even allude to how she hoped to prove pretext at trial and, consequently, her mere conclusory allegations failed to overcome the defendant's showing. Similarly, while plaintiff Howard states that she "will try to prove to the court that her charges are true and correct," Plaintiff's Reply filed November 7, 1986, at 1, she does not even allude to how she intends to prove pretext, other than to say she will "present testimony to substantiate her claim." Plaintiff's Reply filed November 25, 1986, at 3. She has, therefore, failed to meet her burden of demonstrating that the defendant's articulated reasons are a mere pretext for discrimination.

The plaintiff's claim was unsuccessful in the arbitration proceeding and she presents no new evidence or facts in opposition to this motion for summary judgment. She attempts, as she did in the arbitration proceedings, to support her claim of retaliatory discrimination with conclusory allegations. She has not come forward with specific facts demonstrating a genuine issue of material fact for trial. Accordingly, the defendant is entitled to summary judgment.

*Conclusion*

In summary, we dismiss as time barred the plaintiff's allegations regarding the defendant's failure to promote her in 1975 and her "demotion" to the position of index clerk in 1977. We grant summary judgment for the defendant on the plaintiff's claim of being given a "bad reference," since no facts were put forth to establish a genuine issue of material fact. We further

grant the defendant's motion for summary judgment on the plaintiff's claims of retaliatory discrimination because, even if the plaintiff has established a *prima facie* case, which is dubious, she fails to overcome the defendant's articulation of legitimate, non-discriminatory reasons for its actions. The Clerk will enter judgment for defendant.

SO ORDERED.