Katherine M. MILLIKEN

v.

Michael GRIGSON and Barbara Grigson.

No. CIV.A. G–97–232.

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 21, 1997.

428

Afton Jane Izen, Bellaire, TX, for Plaintiff.

John A. Davis, Jr., Davis, McMath and Davis, Houston, TX, Willian J. Skepnek, Skepnek and Maddox, Lawrence, KS, for Defendants.

### ORDER

KENT, District Judge.

Plaintiff Katherine M. Milliken brings this action against Defendants Michael and Barbara Grigson for recovery of fees allegedly owed Plaintiff by Defendants for providing mental health services and case management for the Grigsons and their children. Now before the Court are Plaintiff's Motion to Disqualify Defendants' Attorneys, filed August 29, 1997, and Defendants' Motion for Summary Judgment, filed August 25, 1997. For the reasons set forth below, the Motion to Disqualify is **DENIED,** and the Motion for Summary Judgment is **GRANTED.**

### I.  FACTUAL BACKGROUND

Katherine Milliken is a social worker who began to provide mental health services and case management for the Grigsons and their two children in 1991, after the 1989 explosion of the Phillips 66 refinery in Pasadena, Texas, where Mr. Grigson was employed. Milliken claims that the parties agreed that Milliken would bill the Grigsons' health insurance carrier and Mr. Grigson's worker's compensation carrier, but that the balance of her fees not paid by these sources would be paid at the time of the settlement of the Grigsons' lawsuit against Phillips Petroleum Company. The Grigsons dispute that this agreement was reached, claiming that Milliken had agreed to look solely to the insurance companies for payment. The Grigsons' lawsuit was settled in April of 1994, but the Grigsons did not pay out of the settlement the balance to which Milliken claims she is entitled.

In 1994, Barbara Grigson gave Milliken a check for $75,000.[1] The Grigsons subsequently contacted their bank and properly stopped payment on the check, but the bank wrongfully paid Milliken on the check by giving her a certified check. When the bank discovered its mistake, it froze the funds in the Grigsons' account and stopped payment or the certified check to Milliken. Arbitration over the stopped checks ensued between the bank and Milliken, and between the bank and the Grigsons.

The bank/Milliken arbitration resulted in the bank paying Milliken $75,000 in exchange for Milliken's assignment to the bank of the first $75,000 of her claim against the Grigsons. The assignment agreement gave the bank the right to pursue Milliken's claims and obligated Milliken to cooperate with the bank and to appear and give testimony on the bank's behalf.

The bank and the Grigsons arbitrated before an American Arbitration Association arbitrator for three days during March and April of 1996. Milliken was the bank's primary witness at the arbitration hearing. At the conclusion of the hearing, the arbitrator determined that "Dr. Milliken's[2] invoices and records tendered in evidence and the testimony given at the hearing are too ambiguous, inconclusive and erroneous to establish what if anything further is owed by the Grigsons to Dr. Milliken for the Services in addition to the insurance monies Dr. Milliken has already received." The arbitrator determined that the Grigsons had suffered a loss of at least $75,000 by virtue of the bank's

---

1. The Grigsons claim that Milliken persuaded Barbara Grigson to give her the check, and that they stopped payment because Mrs. Grigson later discovered that Milliken was not owed anything.

2. It appears from reading Defendants' Counterclaim that Milliken is not actually a doctor of psychology, but only a social worker.

erroneous payment of the stopped check, and ordered the bank to pay the Grigsons that amount plus interest. Plaintiff subsequently brought suit in this Court on April 22, 1997, alleging that Defendants are indebted to her in the amount of $137,346.02 plus interest, costs, and attorney's fees.

## II. MOTION TO DISQUALIFY DEFENDANTS' ATTORNEYS

■■■ Plaintiff moves to disqualify Defendants' attorneys William J. Skepnek and John A. Davis [3] on the ground of conflicts of interest. Motions to disqualify attorneys are substantive motions determined by standards developed under federal law. *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir.1992) Such motions are governed by the ethical rules announced by the state and national professions in light of the public interest and rights of the litigants. *Id; In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992), *cert. denied sub nom., Northwest Airlines, Inc. v. American Airlines, Inc.*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). Therefore, the ABA Model Rules of Professional Conduct ("Model Rules"), the ABA Model Code of Professional Conduct ("Model Code"), and the Texas Rules of Professional Conduct ("Texas Rules") are all relevant to the Court's resolution of the Motion to Disqualify. *American Airlines*, 972 F.2d at 610. The party seeking to disqualify an attorney bears the burden of proving that disqualification is warranted. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir. Unit B), *cert. denied*, 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981).

■■■ Plaintiff seeks to disqualify Defendants' counsel under Model Rule 1.06(b), which states that "a lawyer shall not represent a person if the representation of that person: (1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm." This is the only legal basis Plaintiff cites in support of the Motion.

Specifically, Plaintiff alleges four different reasons why Skepnek should be disqualified. First, Plaintiff alleges that Skepnek represented her "in a meeting with Rebecca Forkner, the acting Executive Director of the Texas State Board of Psychologists." For proof on this matter, Plaintiff refers the Court to an affidavit of one of Skepnek's law partners, Ronald McDearman. The affidavit utterly fails to identify what, if any, lawyer-client relationship existed between Skepnek and Plaintiff. The affidavit states nothing more than the fact that Skepnek, McDearman, and Milliken met with a woman who had been harassed and stalked. The Court is completely unable to perceive any identifiable conflict or even contact between the two, at least partly because the record Plaintiff has presented to substantiate her claims is nothing more than utter gibberish. It is completely impossible on the record before the Court to determine whether there was any attorney-client relationship, remuneration, or any other factor relevant to the Court's determination.[4] As Plaintiff bears the burden of proof, her claim must fail.

Second, Plaintiff alleges that Skepnek should be disqualified because Plaintiff has filed a lawsuit against him for defaulting on a guarantee of her fees in the Grigson case. This lawsuit is currently on appeal from the 215th Judicial District Court of Harris County, Texas. Plaintiff alleges that Skepnek's arguments in the litigation against him are not in the best interest of Defendants. Plaintiff's claim, without more to substantiate it, is completely meritless. No explanation is offered to show the Court which of Skepnek's arguments could be harmful to his clients in the instant litigation. More importantly, even presuming Plaintiff had established a

---

**3.** The Motion to Disqualify Davis is dependent upon the disqualification of Skepnek, and therefore the analysis of Davis's conflicts is subsumed in the analysis of Skepnek's conflicts.

**4.** In fact, Plaintiff's entire Motion is unsubstantiated and wholly conclusory. Plaintiff makes no analysis whatsoever and cites no facts or evidence which would establish any kind of basis to disqualify Defendants' counsel. Aside from one reference to Model Rule 1.06(b), Plaintiff does not cite even one iota of legal authority for any of her contentions.

potential conflict between Skepnek and the Grigsons, the Grigsons have filed an affidavit with this Court recognizing that Skepnek is involved in litigation with Plaintiff and stating that they "feel no hesitation in Skepnek representing [their] best interests." Even if Plaintiff's meager allegation could constitute cause to disqualify Skepnek, the Grigsons' informed consent is sufficient to overcome any conflicts.[5]

Third, Plaintiff alleges that Skepnek represented her at a meeting with the insurance company that handled Mr. Grigson's worker's compensation claims where she attempted to secure payment from the company for her services to the Grigsons. In opposition, Skepnek claims that he attended the meeting in representation of the Grigsons' interests of having their insurance company pay any fees due to Plaintiff. Skepnek's deposition reveals that he told the company's administrator at that meeting that he represented the Grigsons and that if the bills were appropriate and necessary, the Grigsons would like the insurance company to pay them. Plaintiff alleges nothing to dispute Skepnek's valid explanation of his attendance at this meeting. Therefore, Plaintiff again utterly fails to carry her burden of establishing an attorney-client relationship.

Finally, Plaintiff alleges that Skepnek recommended to her that she look to the Grigsons for payment, and that when Barbara Grigson gave Plaintiff a check for $75,000, Skepnek advised the Grigsons to stop payment on it. Once again, Plaintiff fails to establish how Skepnek's "recommendation," which Skepnek denies making, constituted any kind of attorney-client relationship between Plaintiff and Skepnek.

Even a cursory reading of Plaintiff's Motion by someone not knowledgeable in the law would reveal the weaknesses of Plaintiff's arguments. Aside from the paucity of legal authority or standards offered to guide the Court in its careful consideration of her Motion, Plaintiff apparently believes that opinionated conclusions make an effective substitute for facts. The best proof Plaintiff offers to substantiate her claims is an affidavit which states absolutely nothing relevant to a resolution of the issues before the Court. To grant Plaintiff's Motion on such a showing would mean that any attorney who attends a meeting or looks at a document could be found to have an attorney-client relationship with someone at that meeting or the author of the document. Such a result is obviously ludicrous and would have a profoundly chilling effect on the ability of lawyers to communicate with other people in the absence of a firm contract between them. Accordingly, Plaintiff's Motion to Disqualify Defendants' attorneys is emphatically **DENIED**.

## III.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Id.; see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Defendants argue for summary judgment in this case on the ground of collateral estoppel, based on the fact that the issue of

---

**5.** Texas Rule 1.06(b) states that a lawyer shall not represent a person if the representation "reasonably appears to be or become adversely limited by ... the lawyer's or law firm's own interests," but 1.06(c) allows an exception where "the lawyer reasonably believes the representation of each client will not be materially affected," and "each affected or potentially affected client consents to such representation after full disclosure."

Plaintiff's fees has already been litigated in the arbitration proceeding. In response, Plaintiff argues that Milliken only assigned to the bank her right to the first $75,000, and specifically reserved any claim to the remainder. Plaintiff also states that the issue at arbitration "was whether the Bank owed the Grigsons their money when they stopped payment on their check, not whether the Grigsons owed Milliken any further balance." [6]

■■■ In Texas, an arbitration award has the same effect as the judgment of a court of last resort. Arbitration awards are favored by the courts to dispose of pending disputes and every reasonable presumption should be indulged to uphold the arbitration proceeding. *J.J. Gregory Gourmet Services, Inc. v. Antone's Import Co.*, 927 S.W.2d 31, 33 (Tex. App.—Hous. [1st Dist.] 1995, n.w.h.); *City of Baytown v. C.L. Winter, Inc.*, 886 S.W.2d 515, 518 (Tex.App.—Hous. [1st Dist.] 1994, writ denied). The propriety of the arbitrator's decision with respect to the bank and the Grigsons is not at issue before this Court. Rather, the issue here is whether the arbitral proceeding collaterally estops Plaintiff from having her claims litigated in this forum. Because the validity of the arbitrator's findings is not challenged, the Court will assume it to be a valid and binding decision.

■■■ The application of collateral estoppel from arbitral findings is a matter within the broad discretion of the district court. *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir.1991); *Howard v. Holmes*, 656 F.Supp. 1144, 1149 (S.D.N.Y. 1987) (arbitrator's decision entitled to such weight as the Court deems appropriate); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979), *Matter of Lewisville Properties, Inc.*, 849 F.2d 946, 949 (5th Cir.1988), *and Hauser v. Krupp Steel Producers, Inc.*, 761 F.2d 204, 207 (5th Cir.1985) (all finding that trial judge, have broad discretion to determine when of-

fensive collateral estoppel should be applied). A party is collaterally estopped from relitigating an issue if 1) the party or its privies litigated the issue in a prior action; 2) the issue was finally decided in that action; and 3) the decision was necessary to the judgment. *Continental Airlines, Inc. v. American Airlines, Inc.*, 824 F.Supp. 689, 707 (S.D.Tex.1993); RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1980); JACK H. FRIEDENTHAL ET AL., CIVIL PROCEDURE § 14.11, at 671–72 (1985). The party to be precluded must have been a party to or in privity with a party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 152, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); FRIEDENTHAL, *supra*, § 14.13, at 682.

■■■ Applying the collateral estoppel factors to this case, the Court finds that the issue of whether Defendants owe Plaintiff any further remuneration for her services has already been decided in such a manner as to preclude relitigation in this forum. First, it is clear from Defendants' summary judgment evidence that the issue was actually litigated in the arbitration proceeding, and that the bank and Plaintiff both had the opportunity to fully and fairly air all of the evidence before the arbitrator. The arbitrator heard three days of testimony, including at least two days of testimony from Plaintiff herself. In the arbitration, the bank asserted the claims assigned to it by Plaintiff in order to recover from Defendants the money it wrongfully paid to Plaintiff. Therefore the proceeding actually involved the dispute between Plaintiff and Defendants here.

Plaintiff's only argument denying the collateral estoppel effect of the arbitration is that the issue before the arbitrator was whether the Grigsons owed the bank the amount at issue in the stopped check. This deceptively misstates the basis of the arbitration. Plaintiff had assigned to the bank her right to the first $75,000 owed to her by

---

**6.** Taken literally, this assertion is clearly false. The bank could not have owed the Grigsons money at the time they stopped payment on their check, because at that point the bank had not yet wrongfully honored the check. The Court will assume that Plaintiff is attempting to argue that the issue at arbitration was whether the bank

owed the Grigsons $75,000 *after* wrongfully honoring the check. This issue is exactly the issue now before the Court, because if Defendants were liable to the bank for the stopped check, then it follows that they would also be liable to Plaintiff for anything over that amount.

Defendants because the bank wrongfully paid the Grigsons' stopped check. The bank acknowledged that it wrongfully paid the check, and therefore, in the arbitration, the bank had no claim to the money except the claim that Plaintiff assigned to it. The claim arbitrated by the bank was the very same claim that is brought before this Court. There can be no argument to the contrary, because the bank had no other claims or defenses to assert.

Second, the arbitrator made a final decision that Plaintiff's evidence was too inconclusive to establish what if anything further was owed by the Grigsons. This final determination was made after three days of hearings, which consisted mainly of Milliken herself testifying regarding her own billing, records, and invoices. This is equivalent to a final determination that Plaintiff's claim was not established by a preponderance of the evidence.

Third, the arbitrator's determination that Plaintiff's evidence was too inconclusive to establish whether the Grigsons owed Plaintiff anything was the critical issue in the arbitration. It was clearly the basis for the arbitrator's determination that the Grigsons were entitled to a refund of the $75,000 that the bank wrongfully paid. If the arbitrator had found that the Grigsons were indebted to Milliken, the result would have been that they were *not* entitled to a refund. Therefore, it was necessary to the determination of the arbitration.

Finally, there is privity between the bank and Milliken such that collateral estoppel can properly be asserted against Milliken. Privity exists when a nonparty's interests have been represented by another who is authorized to act on his or her behalf. JAMES & HAZARD, CIVIL PROCEDURE § 11.22, at 630 (3d ed. 1985). Consequently, the assignor of a cause of action may be bound by a judgment against the assignee. *Id.* Privity is established in this case because the claim being arbitrated by the bank was assigned to the bank by Milliken. Milliken, as assignor of the cause of action, is bound by a judgment against the bank as assignee. Furthermore, Milliken had a full and fair opportunity to participate in the first action, establishing privity between her and the bank. *See* FRIEDENTHAL, *supra*, § 14.13 at 684 (noting that privity has been universally recognized when a party in the second suit participated in litigating the first action); *Montana*, 440 U.S. at 154, 99 S.Ct. at 974 ("[O]ne who ... assists in the prosecution or defense of an action in aid of some interest of his own ... is as much bound ... as he would be if he had been a party to the record.") (quoting *Souffront v. La Compagnie Des Sucreries*, 217 U.S. 475, 486–487, 30 S.Ct. 608, 612, 54 L.Ed. 846 (1910)). Because Milliken assigned her claim to the bank and participated in the arbitration, privity is established.

The Court notes that Plaintiff has failed to respond to any of Defendants' collateral estoppel arguments. In fact, Plaintiff's Response to Defendants' Motion is wholly irrelevant to the collateral estoppel issue. Plaintiff focuses on the fact that Defendant presented no summary judgment evidence to establish that the Grigsons are not indebted to her. Plaintiff smugly argues that Defendants' summary judgment evidence "does not support their claim that Defendants do not owe the balance that Plaintiff is claiming." Perhaps Plaintiff's counsel should read summary judgment motions from opposing parties more carefully in the future. Whether or not Defendants actually owe Plaintiff any money is wholly irrelevant to an inquiry into claim preclusion. Had Defendants included any summary judgment evidence to establish that they do not owe Plaintiff any money, it would have been irrelevant, since the Motion for Summary Judgment was based on collateral estoppel and not Plaintiff's right to payment. Because Plaintiff failed to properly identify Defendants' basis for summary judgment, her Response included several pages of irrelevant deposition testimony and argument based on an issue not at all germane to this Court's analysis of the summary judgment. Requiring the Court to sift through such irrelevant material creates an intolerable waste of judicial resources. Plaintiff's counsel is advised to henceforth read summary judgment motions from opposing parties more carefully in litigation before this Court, and respond appropriately.

Plaintiff also repeatedly relies on the fact that she only assigned her claims to the Bank for up to $75,000, and that any claims over that amount she specifically reserved. This argument is, again, completely irrelevant to Defendants' Motion for Summary Judgment. Because the Court finds that Plaintiff's claims are collaterally estopped due to the arbitration award, ALL of her claims are estopped. It would be completely illogical to estop Plaintiff from pursuing any claims up to $75,000 because the arbitrator found no liability at all, but to allow her to pursue claims for over $75,000. And if the Court had not found collateral estoppel, Plaintiff's assignment of her rights to the bank would not estop ANY of her claims.

Finally, the goals of collateral estoppel dictate that it should be applied in this case. Collateral estoppel serves to protect parties from the expense and inconvenience attending multiple actions, to conserve judicial resources, and to foster consistency among and reliance upon valid judicial or arbitral decisions. *Montana,* 440 U.S. at 153–54, 99 S.Ct. at 973–74. The Court finds, based on the circumstances of this case, that applying collateral estoppel to preclude plaintiff's case will serve to further these goals. Accordingly, for the reasons stated above, Defendants' Motion for Summary Judgment is hereby **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Disqualify Defendants' attorneys for conflicts of interest is hereby **DENIED**. Defendants' Motion for Summary Judgment on the basis of collateral estoppel is hereby **GRANTED**, and Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**IT IS SO ORDERED.**